IN RE ESTATE OF ALICE GOLDTHORP, Deceased. JOHN R. GOLDTHORP AND SARAH J. GOLDTHORP, proponents, and C. H. EIGHMEY, Executor, Appellees, v. EDWARD GOLDTHORP, Contestant, Appellant.

Will Contests: EVIDENCE: *Burden of proof*. Proponents not having been present when the will was made, and having had no fiduciary relations with testatrix, the burden of proof remains with contestant throughout the trial.

*Same*. Proponents of a will in a contest thereof, have only, in the first instance, to show execution thereof.

*Same.* Proponents of a will have not the burden in a contest there-of of showing that testatrix had sufficient mental capacity to make it.

DECLARATIONS OF DECEDENT: *Jury question.* While declarations of testator that a contestant had choked her are not evidence of the fact, they are proper to go to the jury in connection with all the other facts and circumstances in the case, it being a material inquiry whether such statements of deceased was a mere delusion or a fact.

*Same—Instructions.* Though such declaration was not evidence of the fact and though contestant testified that he never choked decedent, the court properly refused to charge that there was no evidence of the choking, charging, instead that there was no direct evidence of it.

REASONABLENESS OF WILL. A testator is under no obligation to give any of his property to his children, or any of them.

INSTRUCTION: *Grouping facts.* An instruction grouping facts on which contestant relies, and asking that, if they be made to appear, a finding shall be had against the will, is properly refused; no reference being made to other evidence which might explain such fact.

*Same.* The court, after directing the jury to consider all the evidence, does not err in singling out certain matters, and saying that these in themselves are insufficient to establish either claim of contestant.

INSTRUCTIONS: *Degree of proof.* Use of the word "conviction," in an instruction that undue influence may be shown by facts and circumstances which lead the mind to the conviction that it has been exercised, is harmless; instructions having been given that the burden was on contestant to establish undue influence by the preponderence of the credible testimony, "which means, by the greater weight of the testimony."

*Law notations on instructions.* That instructions go to the jury with notations of authorities at the bottom in no way emphasizes the law as given, and is not prejudicial error.

Peremptory Challenges: EXAMINATION OF JUROR: *Will contests.* For the purpose of advising proponents of a will, in a contest thereof, as to the exercise of peremptory challenges, jurors may be asked whether, without reference to other facts, the fact that a testatrix gives nothing to some of her children would influence their verdict.

CHALLENGE FOR CAUSE: *Discretion of trial judge.* The trial court in a will contest does not abuse its discretion in sustaining a challenge for cause to a juror who had stated that the fact that

a testatrix gives nothing to some of her children would influence his verdict, the juror being before the court, and some of the questions eliciting the fact being asked by the court.

OBJECTIONS TO COMPETENCY: *Must be timely.* Objection that jurors were incompetent under Code, section 337, because they were officers at the election from which their names were returned and themselves requested return of their names, cannot be made after examination of the jurors, though the fact was not known until after the verdict.

*Appeal from Dubuque District Court.*—HON. FRED O'DONNELL, Judge.

WEDNESDAY, JANUARY 29, 1902.

THIS is a contest over the probate of the will of Alice Goldthorp, deceased. It is claimed that testatrix lacked mental capacity, and that the will was the result of undue influence. Trial to a jury, verdict and judgment sustaining the will, and defendant (contestant) appeals.—*Affirmed.*

*R. W. Stewart* for appellant.

*D. E. Lyon,* and *Henderson, Hurd, Lenehan & Kiesel* for appellees.

DEEMER, J.—This is the third time this case has been before us. The former opinions will be found in 94 Iowa, 336, and 106 Iowa, 722. On the last trial the case was submitted to a jury, with the result above stated. The case comes to us on assignments of error challenging the rulings of the trial court made during the progress of the case.

I. Proponents were permitted over contestant's objection to propound this interrogatory to the jurors as they were called: "Would the fact that a person who makes a will gives nothing to some one of her children have any influence upon your mind in arriving at a verdict in the case? Would that fact alone, without

reference to the other circumstances in the case, have any influence upon your mind in considering this case ?" Three answered in the affirmative, and two of these were excused peremptorily. The third was challenged for cause, and the challenge was sustained. Complaint is made of the rulings. The question was no doubt proper, for the purpose of advising proponents as to whether or not they would exercise peremptory challenges; and as to the two jurors excused peremptorily no complaint may properly be lodged against it. As to the third, he testified that the fact inquired about would prejudice him, and that he would be influenced by this fact alone, without reference to the other evidence in the case. As some of the questions eliciting this information were propounded by the court itself, and as the juror was before the court, we think the discretion vested in it in such matters was not abused, and that the ruling should be approved. *Sprague v. Atlee,* 81 Iowa, 11; *Geiger v. Payne,* 102 Iowa, 587.

II. Evidence was introduced of declarations made by the deceased to the effect that contestant had choked her. This was offered in explanation of the fact that she left nothing to him by will. On rebuttal, over proponents' objections, contestant was permitted to testify that he had never choked his mother, the deceased. Contestant requested an instruction to the effect that there was no evidence that he ever choked his mother. This was refused, but the court said in its charge that there was no direct evidence of such choking; that declarations to that effect by Mrs. Goldthorp were not evidence of such treatment, but that whether or not such statements were true was to be determined from the other facts and circumsances in the case. It was material, of course, to know whether the deceased's statement was a mere delusion or a fact, and the question, of necessity, was for the jury. The court said her statements were not evidence of the fact, and

left the matter to the jury, as it should have done. In the course of the charge these declarations were again referred to, and their bearing on the question of unsoundness of mind fully explained. Of necessity the jury had to determine the question of truth or falsity of the declarations from the other evidence in the case. It would have been error for the court to have assumed that the charges were either true or false, under the circumstances shown by this record. Instruction B asked by contestant was properly refused. It was to the effect that certain circumstances might be considered evidence of undue influence; and that if the jury found the will unreasonable in its provisions, and that from previous statements and declarations of deceased these provisions did not express her wishes, then they should find that the instrument was not the will of Alice Goldthorp. As sustaining our conclusion, see *Webber v. Sullivan,* 58 Iowa, 265; *Muir v. Miller,* 72 Iowa, 589. In the twelfth paragraph of the charge as given the jury was properly directed to consider all the matters referred to in the instruction asked as bearing on her mental condition. This was all that contestant was entitled to. *Sim v. Russell,* 90 Iowa, 656; *Bennett v. Hibbert,* 88 Iowa, 154. The facts on which contestant relied were grouped in an instruction asked by him, and the jury therein told that, if these facts were made to appear, then it should find that the document in question was not the will of Alice Goldthorp, deceased. This instruction was properly refused, because it simply grouped the facts on which contestant relied, without referring to the other evidence, which might have been explanatory of these circumstances. The weight of this evidence, considered with all the other evidence in the case, was properly left to the jury, under approved instructions. Contestant also asked instructions to the effect that, upon a certain showing being made, the burden shifted to proponents to establish the legality of the will. These instruc-

tions were properly refused. Whatever the rule in other states, we have held in such cases that the burden, as a general rule, does not shift, but remains with contestant throughout the trial. *Denning v. Butcher,* 91 Iowa, 425, and cases cited. There may be exceptions to this general rule but there is nothing in this case to take it out of its general class. Proponents were not present when the will was made, and no fiduciary relations are shown to have existed between them and the deceased. In another request contestant asked the court to instruct that the burden was on proponents to establish that Alice Goldthorp had sufficient mental capacity to make the will. This was clearly erroneous, and the trial court was justified in refusing it. *In re Coffman's Will,* 12 Iowa, 494; *Stephenson v. Stephenson,* 62 Iowa, 166.

III. Numerous instructions given are complained of. To set them out in *extenso* would unduly lengthen this opinion, and we content ourselves with stating the substance of those complained of and the objections thereto, not elsewhere considered. In the sixth the jury were told that proponents had only to show that the will was executed in legal form, and that thereupon the burden was upon contestant to show that it was not, because of the specific objections made thereto, the last will of deceased. This is objected to because it is said proponents must make out a *prima facie* case of competency on the part of testatrix. In his objections contestant alleged that deceased was old, and in a very feeble condition for a long time before her death. If she was old, she was surely of sufficient age to make a will. The instrument, on its face, was properly executed, subscribed by the testatrix and the necessary number of witnesses; it was filed with the proper officer; and contestant's objections were solely to the mental capacity and free agency of the testatrix. Under such circumstances the burden was on defendant to establish his claims. Moreover, the abstract shows that the testimony

of the attesting witnesses was taken on this trial, although neither their evidence nor that of ony other of the witnesses is set out in full.  If it were necessary, we would presume that this evidence was sufficient to make out a *prima facie* case, for the contestant seemed content with the showing, and, without moving for a verdict, proceeded to introduce his evidence.  Of course, there must be some showing as to the due execution of a will before a contestant may be put to his proofs; but this showing need not go to the extent claimed by contestant.  When the attesting witnesses are offered to prove the will, and it seems to be executed in due form, this alone is generally sufficient where objections are made to the probate thereof.  *Bates v. Bates,* 27 Iowa, 111; *Stephenson v. Stephenson, supra.*  The burden of proving want of mental capacity and undue influence was upon the contestant, and, as we have said, as a general rule it never shifts.  See, in addition to the authorities cited, Page, Wills, sections 369, 370, 382, 405.  In other words, sanity and free agency are presumed, and proof of the execution of a will in legal form is all that is required of proponents in the first instance.  *In re Brock,* 37 S. C. 348 (16 S. E. Rep. 38) ; *Blake v. Rourke,* 74 Iowa, 519.  The criticism of the eighth instruction, with reference to the effect of a delusion, is hypercritical.  The instruction left it to the jury to determine whether or not the alleged delusion influenced or prompted the disposition of the property made by the deceased, and was told that, if it found such a delusion existed, it should find the will invalid.  This was so clearly correct that nothing further need be said on this point.  The instructions defining undue influence could hardly be improved upon.  They seem to be taken from *McIntire v. McConn,* 28 Iowa, 485.  Moreover, the contestant asked just such instructions, and cannot be heard to complain of them.  The jury was told in the fifteenth instruction that there is no legal obligation on any parent to give any of his property

to his children, or to any particular child. This is manifestly correct. In the sixteenth we find this paragraph: "Undue influence need not be proved by direct evidence, but may be shown by facts and circumstances which lead the mind to the conviction that it has been exercised." The use of the word "conviction" is said to be sufficient to condemn this instruction. In other instructions the jury were properly told that the burden was "on contestant" to establish want of mental capacity and undue influence by the preponderance of the credible testimony, "which means by the greater weight of the testimony." The one complained of, taken in connection with the ones given, was not such as to justify the conclusion that the jury may have been misled by the use of the challenged word. When the charge is considered as a whole, the jury must have understood that this conviction would be justified from a fair preponderance of the credible evidence. As said in *Turner v. Hardin,* 80 Iowa, 693, it meant no more than belief generated from the weight of the evidence. There is no conflict in the instructions.

Some of the instructions given at the request of the proponents had notations of authorities at the bottom. These notations were not erased by the court, but went to the jury in their original form. This is also said to be error. They were, no doubt, appended for the convenience of the court in examining the authorities sustaining the propositions. That they were not erased was due to oversight. But, however this may be, no possible prejudice resulted. Indeed, we think they were scarcely intelligible, except to lawyers familiar with such citations. They did not in any manner emphasize the law as given, and were not prejudicial. In various instructions, after directing the jury to consider all the evidence in the case relating to the issues, the court singled out certain matters, and said that these in themselves would not be sufficient to establish either claim made by contestant. The instructions so given were

in harmony with the rules previously announced by this court, and, taken in connection with the other paragraphs, were not only correct, but were demanded by the record.

IV. The last point made is that two of the jurors were disqualified. It appears that one of them was a judge and the other a clerk at the general election from which their names were returned. It is contended that they requested that their names be returned, and were therefore incompetent, under section 337 of the Code, which renders such jurors incompetent. There is no evidence that they or either of them made any such request. But, if there was, contestant should have ascertained that fact when examining the jurors as to their qualifications. Failing in this he should not now be heard to complain. The fact that he did not discover the alleged incompetency until after the verdict was returned is no excuse. *Slate v. Pickelt,* 103 Iowa, 717; *Faville v. Shehan,* 68 Iowa, 242.

We have now gone over all the material matters argued by counsel, and reach the conclusion that there was no error of which contestant may justly complain.—AFFIRMED.