## PLANTERS' COTTON & GINNING CO. v. PENNY.

No. 7346.   Opinion Filed February 15, 1916.

(155 Pac. 516.)

1. **MASTER AND SERVANT—Injury to Servant—Negligence—Sufficiency of Evidence.**  Plaintiff sued defendant in damages for personal injuries alleged to have been sustained while in the employ of defendant around a gin stand in a cotton gin, and alleged as ground of negligence the failure of defendant to comply with the Factory Act (Rev. Laws 1910, sec. 3746).  The case was defended on the theory that plaintiff was employed to work in the engine room only, and not around the gin stand, and that, if he was, defendant had not failed to comply with the Factory Act.  Evidence examined and **held** sufficient to take the cause to the jury on plaintiff's theory of the case.

2. **SAME—Contributory Negligence—Instructions.**  Instructions examined, and **held** to fairly state the law.

3. **APPEAL AND ERROR—Harmless Error—Instructions—Measure of Damages.**  In a suit in damages for personal injuries, where the amount recovered was not excessive, error in instructions on the measure of damages is harmless.

(Syllabus by the Court.)

*Error from District Court, Pottawatomie County;*
*Chas B. Wilson, Jr., Judge.*

Action by Jesse J. Penny against the Planters' Cotton & Ginning Company.  Judgment for plaintiff, and defendant brings error.  Affirmed.

*Abernathy & Howell,* and *Mosier, Greenslade & Dudley,* for plaintiff in error.

*Baldwin & Carlton,* for defendant in error.

TURNER, J.  On August 1, 1912, in the superior court of Pottawatomie county, Jesse J. Penny, defendant in error, sued Planters' Cotton & Ginning Company, plaintiff in error, in damages for personal injuries alleged to have been sustained by him while in the employ

of defendant and at work in its cotton gin at Oke-mah. The petition substantially states that the cotton gin was an institution where machinery was used; that defendant failed to provide belt shifters and loose pulleys for the purpose of throwing the belts and stopping the saws of the gin stand at which plaintiff was employed by defendant to work and was working at the time he was injured (both of which he says were practical devices), in violation of Revised Laws 1910, sec. 3746; that, while working at said gin stand, and while it was in operation, it became his duty to force cotton seed through the gin pans into the conveyors beneath; that in order so to do it was necessary to and he did run his right arm into an opening in the gin between the seed pan and the saws revolving above the pan; and that while so doing his arm was caught in the saws, without negligence on his part, and his hand cut off, and his arm so mutilated as to require amputation between the shoulder and elbow, to his damage, etc.

For answer, after a general denial, defendant specifically denied that plaintiff was employed to work in any part of the gin building except the engine room; denied that he was employed or that it was his duty to work in the gin room or about the gin stand at which he was injured; and denied that, if he was so employed, defendant had failed to comply with the statute as alleged. Defendant also pleaded contributory negligence and assumption of risk.

After issue joined by reply, there was trial to a jury in the district court, to which the cause had been transferred, and judgment for plaintiff for $1,250, and defendant brings the case here.

The demurrer to the evidence was properly overruled, for the reason there was sufficient to take the case to the jury on the question of defendant's negligence on plaintiff's theory of the case. Upon this point the evidence disclosed that plaintiff at the time he was injured was about 25 years old. Two days theretofore he applied to the foreman of defendant's gin for employment. When the foreman asked him what he could do, he replied, "Just anything; have you any firing?" to which the foreman said, "No," and requested that he come back in the morning, at which time the foreman said he would put plaintiff to work, which he did. At that time the foreman said he did not have a full crew, and would expect plaintiff to help the boys in doing anything necessary in running the gin. Part of the time he was employed he acted as fireman, and part of the time he kept the gin stands clear and going, to the knowledge of the foreman, who saw him working at the gin stands. At other times the foreman had the plaintiff sewing belts and going back and forth uptown getting repairs for the same and doing general work about the gin. In short, the foreman had him at work doing whatever was necessary about the plant. The evidence further tended to prove that the gin on which plaintiff was injured was run by a belt over a tight pulley on the line shaft connected with a corresponding pulley on another shaft running through the line of gins in which the gin in question was one. This shaft ran the internal machinery of the gin in question, which consisted of a system of revolving saws through which the cotton passed and dropped its seed into a pan, some 28 inches below, from which they passed into a conveyor consisting of a huge auger-shaped contrivance which ran longitudinally in a box on the floor and which carried the seed away. At the time he was

injured the seed in the particular gin in which plaintiff
was injured became clogged in the seed pan, and failing
to drop through into the conveyor as it should, plaintiff
took a stick about two feet long and thrust his arm into
a triangular hole in the end of the gin between the gin
pan and the saws revolving above the gin pan and about
eight inches above his arm, and undertook, with the stick,
to force the seed through the gin pan into the conveyor,
when his arm was caught by the saws and injured to such
an extent as to require amputation.  His testimony was to
the effect that the saws could have been stopped and the
gin pan and conveyor left running had defendant com-
plied with the statute by having a belt shifter which he
could have grasped by reaching up, and by pulling could
have shifted the belt and stopped the saw before thrust-
ing his arm into the position he did.  The witness London
also testified to the practicability of the same mechanical
arrangement.  Of course, there was abundant testimony,
in effect, that no such device was practical; but there being
evidence reasonably tending to prove that it was and. to
support plaintiff's theory of the case, the court did right
in sending the case to the jury on the question of the
negligence of defendant.

Plaintiff having prevailed on his theory, all that re-
mains to consider is whether the court erred in the admis-
sion or rejection of evidence or in his instructions to the
jury.  If he did neither, the judgment must be affirmed.
As to the former, there being no error, we turn to the as-
signment that the court erred in charging the jury thus:

"The burden of proving contributory negligence is
on the defendant, and, unless the jury is reasonably satis-
fied from the evidence that the plaintiff was guilty of neg-
ligence himself which proximately helped to bring about

his own injuries, the defendant must fail in his defense of contributory negligence."

Defendant contends that this was error, because, he says:

"The instruction, by the words 'the defendant must fail on its defense of contributory negligence unless the jury are reasonably satisfied from the evidence,' placed upon the defendant the burden of proving by its own evidence that the plaintiff was guilty of contributory negligence. In other words, the instruction is tantamont to saying to the jury that the defendant by its own evidence must show that the plaintiff was guilty of contributory negligence or must fail in its defense."

Not so, for the reason that, as plaintiff's was the only direct evidence on contributory negligence, it was but fair to presume that by "the evidence" the court meant his evidence. Besides, such is bound to be true, for the reason that there was no eyewitness to the accident, and defendant offered no evidence in support of its plea of contributory negligence, but relied on showing such by plaintiff's evidence alone. In these circumstances we think the charge fairly states the law. There is no error in the remaining instructions, for the reason that, taking them as a whole, they fairly state the law. As to instruction No. 14, we might say in passing that, although it permits defendant in error to recover "his loss of wages up to this time, if any," which means up to the time of trial, we will not hold the same to be reversible error, although to support the charge there is no evidence of loss of wages other than for nine months after the injury; this for the reason that in *Great Western Coal & Coke Company v. Coffman*, 43 Okla. 404, 143 Pac. 30, we held that where, as here, the judgment was not excessive, an instruction which failed to limit the jury to assessment of pecuniary damages is

harmless.   In support of which rule we cited 38 Cyc. 1814, where cases from half the states of the Union are cited as authority for the proposition.   Quoting approvingly from *Chicago, R. I. & P. Ry. Co. v. Archer*, 46 Neb. 914, 65 N. W. 1043, we said:

"We think the true rule is that, where the damages are unliquidated, and the jury has been by the instructions permitted to consider an element not sustained by the evidence, the error should be treated as harmless where, from an inspection of the evidence and the verdict, it is reasonably certain that the jury was not misled, and that it allowed nothing on account of the element improperly submitted to it.   We think this case discloses a state of affairs within the rule."

And in *Suttle v. Brown*, 137 Ill. App. 438, where in the syllabus it is said:

"Errors in ruling upon instructions will not reverse, where it appears that such errors refer solely to the question of damages, and the damages awarded were amply sustained by the evidence."

During the trial defendant offered in evidence its check for $4.50, payable to plaintiff for his two days' wages, a similar check for $103, in payment of his doctor bill, and another for $53 in payment for nursing; all of which had been paid and charged to defendant's account at the bank.   While counsel for plaintiff was addressing jury, defendant interposed the following:

"Mr. Mosier:   The defendant objects to the argument of counsel that the introduction of checks Exhibits D, E, and G is an admission of liability on the part of the defendant, for the reason that the same is incompetent, it is an erroneous and unwarranted statement, and entirely out of the record; it not being shown that the bills paid by these checks were ordered by the defendant.

"The Court: Proceed. The court will not interfere with the argument of counsel.

"Mr. Mosier: To which ruling the defendant excepts."

And he now insists that this case should be reversed because those remarks of counsel were improper. We do not think so, for the reason that the checks were in evidence, and, the jury being the sole judge of the weight of the evidence, plaintiff's counsel had the right to state to the jury his idea of their probative force, although it might have been erroneous.

Finding no error in the record, the judgment is affirmed.

All the Justices concur.