### LUSK et al. v. KENNEDY et al.

No. 8280—Opinion Filed Nov. 26, 1918.

(176 Pac. 502.)

#### 1. Carriers—Delay in Delivery — Special Damages.

When goods are delivered to a common carrier for shipment, the object of the shipper being to use them for a particular purpose, and there is delay in transporting and delivering the same, on account of the negligence of the carrier, and the object of the shipper is specially brought to the attention of the carrier at the time of delivering the goods for shipment, or circumstances are known to the carrier from which the object ought in reason to be inferred so that the object may be taken to have been within the contemplation of both parties, damages may be recovered for the natural consequences of the failure of the object. (Adopting rule in Simpson v. Railroad Co., 1 Q. B. Div. 274.)

#### 2. Same—Notice of Intended Use.

A railroad company had a station and an agent at a place where a cotton seed mill was engaged in the manufacture of cotton seed cake, a well-known feed used for cattle. K., who was feeding 170 head of cattle for market at a station 38 miles distant on the line of railroad in question, delivered to the agent of the railroad company, to be shipped to the place where the cattle were being fed, 200 sacks of cotton seed cake known by the agent to have been purchased from the mill for the purpose of being used to feed cattle. K., at the time the contract was made, informed the agent of the railroad company that he was out of feed and needed the cake, asking how soon the same could be shipped, stating that he intended to leave on the evening passenger train for the place to which the feed was to be shipped. The agent responded that the feed would reach such place before the arrival of the shipper who would have arrived on the same day. Whereupon the shipper delivered the cake to the carrier and assisted in loading the same, the transportation charges being paid in advance. On account of the carrier's negligence, the transportation and delivery of the cake was delayed for a period of seven days, during which time the cattle suffered and became reduced in flesh, because of lack of proper feed which the shipper, though making diligent efforts, was unable to procure from other sources. The shipper inquired each day of the agent of the carrier at the point of destination concerning the arrival of the cake, thereby reminding the agent of the importance of the shipment. Held, that the conversation had with the agents of the railroad company and the circumstances within their knowledge were sufficient to give the railroad company notice of the particular object for which the cake was to be used and, in connection with the other facts and circumstances in the case, authorized a recovery for depreciation in the value of the cattle resulting from the negligent failure of the railroad company to ship and deliver the cake as agreed upon.

#### 3. Trial — Instructions — Requesting Correct Charge.

Where the defendant in a damage suit fails to request an instruction correctly defining measure of damages, an instruction to the jury on the measure of damages slightly inaccurate, which is not shown to have misled the jury, the damages awarded not being excessive, will not work a reversal.

(Syllabus by Stewart, C.)

Error from District Court, Pontotoc County: Tom D. McKeown, Judge.

Action by J. W. Kennedy and D. Kennedy against James W. Lusk and others, receivers of St. Louis & San Francisco Railroad Company. Judgment for plaintiffs, and defendants bring error. Affirmed.

W. F. Evans, R. A. Kleinschmidt, and E. H. Foster, for plaintiffs in error.

C. F. Green and Wimbish & Duncan, for defendants in error.

Opinion by STEWART C. Plaintiffs recovered judgment against the defendants for special damages alleged to have been sustained because of the negligence and delay of the defendants in shipping two hundred sacks of cotton seed cake purchased by the plaintiffs at Holdenville, Okla., and delivered to defendants to be shipped to Fitzhugh, Okla., to be used by the plaintiffs in feeding 170 head of cattle which plaintiffs were preparing for the market; it being alleged that the agent of the defendants, after being

made aware of the purpose for which the cotton seed cake was to be used and the importance of immediate shipment. agreed to ship the same out at once so that it would reach its destination on the same day, the distance being only 38 miles and on the defendants' line of railway, and the damages recovered being for loss of flesh and shrinkage of the cattle because of the plaintiffs being unable to obtain proper and sufficient feed for them during the time of the delay. The defendants duly appeal to this court from the judgment rendered.

The evidence shows that one of the plaintiffs helped the employes of the railroad company to load the feed on the day the contract of shipment was made; that, before entering into the contract of shipment, he told the agent of the railroad company that he had a car of cake and that he desired to know when he could get it out, saying that he was out of feed and needed it; that plaintiff told the agent he was to leave on the evening train, by which he would reach Fitzhugh the same day, and the agent said that the car would be at Fitzhugh before the plaintiff arrived; that, notwithstanding the feed was loaded before the plaintiff left Holdenville, the same did not reach its destination until the expiration of a period of seven days; that the plaintiffs repeatedly and daily inquired of the agent at Fitzhugh concerning the arrival of the feed, impressing upon the agent the importance of receiving it; that the plaintiffs were unable to obtain proper feed for their cattle from any other source, though they attempted to do so, and, during the delay, the only feed that could be obtained for the cattle was prairie hay and such pasturage as could be had in winter time. the time being about the 7th day of February; that, on account of the failure to get the feed, the cattle declined in flesh on an average of 60 to 70 pounds per head, which would not have happened if plaintiffs had been able to obtain proper feed; that the cattle had, prior to this time, been fed on cotton seed cake, it being the object of the plaintiffs to prepare them for shipment by the month of June; that the value of the cattle at the time was 6 cents per pound; and that the plaintiffs suffered damages because of insufficient and improper feed for the cattle to the extent of their depreciation in value. The case was tried before a jury, and a verdict rendered for plaintiffs in accordance with which the court rendered judgment.

The defendants in their brief urge error of the court (1) in giving instruction No. 3 to the jury, (2) error in excluding competent evidence offered by the defendants, and (3) excessive damages. The instruction complained of reads:

"The court instructs the jury that if you believe from a preponderance of the evidence that on the 7th day of February, 1914, the plaintiffs purchased 200 sacks of cotton seed cake, and had the same delivered to the defendants by the oil mill company, to be shipped to Fitzhugh, Okla., and the freight was paid thereon, and you further believe from a preponderance of the evidence that, at or before said cotton seed cake was delivered to said defendants for shipment, the plaintiffs notified the agents of the defendants at Holdenville, Okla., that he was feeding 170 head of cattle at or near Fitzhugh, Okla., and that they were about out of such feed for said cattle, and that unless said cotton seed cake was transported within a reasonable time to Fitzhugh, by the defendants, said cattle would shrink, and the plaintiffs would be damaged thereby, and you further find from a preponderance of the evidence that the said cotton seed cake was accepted for shipment by the defendants, and their bill of lading issued therefor, and that said defendants were negligent in transporting said cotton seed cake, in that they failed to transport it within a reasonable time, then you are instructed to find the issues in favor of the plaintiffs, and assess their damages at such a sum as would be the reasonable market value for cash, per pound for the number of pounds said cattle shrunk, if any, as a direct cause of the negligence, if any, of the defendants, as hereinbefore set out, not to exceed the sum of $850."

It is urged that the instruction is erroneous in assuming a state of facts not in evidence, in that the instruction assumes that there was evidence to show that the plaintiffs notified the agents of the defendants that they were feeding 170 head of cattle and that they were about out of feed, and that, unless the cotton seed cake was transported within a reasonable time, to Fitzhugh, the cattle would shrink and the plaintiffs would be damaged thereby, it being claimed that there was no testimony showing that such facts were communicated to the agent; and in this connection the defendants invoke the rule that special damages arising from a breach of carrier's contract can only be recovered when the carrier has had notice of the special circumstances under which the shipment is made and when the purpose of the shipment was in contemplation of the parties. It is also claimed that the instruction does not corectly state the measure of the special damages, if any, that should have been recovered. The evidence does show that the agent of the defendants at Fitzhugh had knowledge that the cotton seed cake was brought from the mill located in his town for the purpose of feeding cattle,

and it may be said that the circumstances show that he had knowledge of the object of its manufacture and that the plaintiffs were cattlemen, not dealers in feed. In fact, the use of cotton seed cake is a matter of common knowledge in this state. He was notified that plaintiffs were out of feed and of the necessity for immediate shipment, because of which notice, he, in effect, agreed to deliver the same at point of destination on the same day, receiving in advance the consideration for such agreement. It is also shown that, when the feed failed to arrive, as agreed upon, the agent of the defendants at Fitzhugh was immediately notified, and thereafter, daily from time to time, the importance of the shipment was made known to such agent. If such facts show sufficient notice upon which to base a claim for special damages, the instruction of the court requiring the jury, before awarding damages, to find that the agent of the defendants was notified of the feeding of the particular 170 head of cattle and of the damage that would result, did not prejudice the rights of the defendants. But the defendants urge that the notice given was not sufficient to apprise the company of the probability of the special damages recovered resulting from a delay in shipment and delivery. In Port Blakely Mill Co. v. Sharkey, 102 Fed. 259, 42 C. C. A. 329, it was held that, where there was a delay in transportation of horses sent to Alaska to be delivered not later than a day named, the loss of what might have been earned by the use of the horses could be recovered, the agent of the carrier being notified in advance that they were shipped for the purpose of being used in hauling, in which business there was great profit, and the court indorses the holding in Simpson v. Railroad Company, First Queen's Bench Division. 274, in which Cockburn, C. J., says:

"The law, as it is to be found in the reported cases, has fluctuated; but the principle is now settled that, whenever either the object of the sender is specially brought to the notice of the carrier, or circumstances are known to the carrier from which the object ought in reason to be inferred, so that the object may be taken to have been within the contemplation of both parties, damages may be recovered for the natural consequences of the failure of that object."

In the case of Simpson v. Railroad Company, the plaintiff, who was a manufacturer, was in the habit of attending agricultural shows exhibiting samples of his goods, making a profit thereby. He delivered goods for such purpose to the receiving agent of the railroad company to be carried by a particular day to a show ground at another place where he expected to make an exhibition, but nothing was expressly communicated to the carrier as to the intention of the plaintiff. The court held that the circumstances were sufficient to place the carrier on notice, saying:

"The defendants had an agent on the ground at the Bedford agricultural show, where this contract was made, for the purpose of drawing custom to their line; and their agent must have known that the plaintiff had been exhibiting these goods, and that they were being sent to Newcastle for the same purpose. I therefore cannot doubt that there was in this case common knowledge of the object in view. As to the supposed impossibility of ascertaining the damages, I think there is no such impossibility; to some extent, no doubt, they must be matter of speculation, but that is no reason for not awarding any damages at all."

These holdings are based on the rule in Hadley v. Baxendale, 9 Exch. Rep. (W. H. & G.) 341, which, since its pronouncement, has become a standard and has been adopted by this court in M. O. & G. Railway Co. v. Hazlett et al., 35 Okla. 12, 128 Pac. 105; the same being as follows:

"Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered arising naturally, i. e. according to the usual course of things, from such breach of contract itself, or such as may be reasonably supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it."

As to subsequent notice given the agent of the carrier, the text in 16 Cyc. 450, has this to say:

"That subsequent notice, however, of the effect of further delay after the goods should have been delivered, may render the carrier liable for damages accruing after that time by reason of his negligence in not tracing and finding the goods."

The text is supported by the authorities.

It cannot be said that the carrier was without notice "from which the object ought in reason to be inferred" or that the object was not within contemplation of the parties: nor can it be said that the damages recovered were not "the natural consequences of the failure of the object." In our opinion, the conversation with the agent of the defendants and the circumstances in connection with the shipment were sufficient to apprise the carrier of the importance of the shipment and the special damages that might result from delay, and we hold that

the plaintiffs were entitled to recover, on account of the delay, such damages as the evidence sustains.

The instruction of the court on the measure of damages to the effect that, in case of finding for the plaintiffs, the damages should be for the reasonable market value per pound for the number of pounds the cattle shrunk, while not a precise and accurate statement of the measure of damages yet, under the evidence in this case, such instruction did not mislead the jury and was not prejudicial. It would perhaps have been more nearly correct to have instructed that the measure of damages was the difference between the market value of the cattle, if they had been properly fed, and the market value after the loss of flesh caused by failure to receive proper food; but the evidence shows that the cattle were worth 6 cents per pound, and, if they had lost 60 or 70 pounds per head, the difference in the market value was readily ascertainable by applying the price per pound to the amount of the shrinkage. It appears from the amount awarded that the jury allowed 60 pounds per head for shrinkage at 6 cents per pound, which on 170 head would have amounted to the $612, for which verdict was rendered. It is well settled by this court that, where there is competent evidence to show damages alleged and the verdict is not excessive, and when the complaining party does not request an instruction correctly stating the measure of damages, the cause will not be reversed because the measure of damages is inaccurately stated in the instructions. Ft. Smith & Western Railway v. Moore, 66 Okla. 322, 169 Pac. 904; Dodson & Williams v. Parsons, 62 Okla. 298, 162 Pac. 1090; Planters' Cotton & Ginning Co. v. Penny, 53 Okla. 136, 155 Pac. 516; Great Western Coal & Coke Co. v. Coffman, 43 Okla. 404, 143 Pac. 30; Midland Valley Railroad Co. v. Kersey, 57 Okla. 9, 157 Pac. 139. While the defendants' brief suggests that the damages are excessive, yet there is no assignment of error to such effect, and the objection was not embraced in the motion for a new trial. However, from the facts in evidence, it appears that the judgment was not excessive. The defendants in error object, because the following testimony, in the presence of the court but out of hearing of the jury, was not permitted by the court to go to the jury:

"Q. They (meaning the cattle) had gotten back about as fat in September as they were on the 7th of February? A. They were about as fat in September as they were in February."

Other testimony in the record shows that, because of the failure to receive the cotton seed cake, the cattle were not ready for market by June, as at first contemplated by the plaintiffs, and that they were not able to ship them to market until the following fall. The defendants contend that, if the cattle had recovered by fall, the plaintiffs would not be entitled to damages for the shrinkage and would in no event be entitled to recover more than the expense for extra food necessary to bring them up to their former weight. We are unable to so hold. The plaintiffs were entitled to such damages as were occasioned by the delay, and, if they afterwards incurred expense for the purpose of preparing the cattle for market, the plaintiffs did so at their own risk and with their own money. When the damage accrued, the liability attached, and the defendants were not entitled to the benefit of subsequent investments made by the plaintiffs.

The defendants asked one of the plaintiffs, on cross-examination, the following question: "Q. What was the average weight of the cattle in November when you sold them?" An objection to the question was sustained, whereupon the defendants stated that they expected the answer to be that the cattle would weigh in November on an average of something like 800 or 850 pounds. They assign the action of the court in sustaining the objection as error and claim that the answer would have assisted the jury in determining whether or not cattle of such weight could have lost as much as 60 pounds per head because of the lack of feed in February. We think the evidence is quite remote, and, while it would not have been error to have admitted the same, it is evidence from the record that the answer would not have materially assisted the jury.

There being no other errors urged in the brief of defendants, for the reasons given, the judgment of the trial court is affirmed.

By the Court: It is so ordered.