## RHODES v. LAMAR et al.

No. 19112.   Opinion Filed Sept. 9, 1930.

Rehearing Denied Oct. 28, 1930.

224

A. J. Biddison, Harry Campbell, Valjean Biddison, and John H. Cantrell, for plaintiff in error.

A. F. Moss and H. R. Young, for defendants in error.

BENNETT, C.   Francis C. Lamar, age 25, and by occupation a stenographer and clerk, sued R. E. L. Rhodes and P. C. Geissler, physicians and surgeons, to recover damages upon the theory that they, while removing plaintiff's tonsils, negligently per-

mitted a glass light globe to find its way into plaintiff's lung by which he was gravely injured. The jury found against the defendants, and R. E. Rhodes alone appealed.

. The petition is in the usual form, alleging that plaintiff employed defendants, duly licensed physicians in Tulsa, to remove his tonsils; that defendants placed plaintiff under an anaesthetic and negligently permitted an electric light bulb used by them in the operation to become unfastened from the instrument to which it was attached and pass into plaintiff's lung; that the defendants so negligently manipulated said device in the mouth and throat of plaintiff as to cause same to come loose; that after the bulb became detached, they negligently failed to discover and properly remove same, and that defendants also negligently failed to advise plaintiff after they knew the bulb had passed down his throat, but wrongfully denied knowledge thereof; that after its escape into plaintiff's lung, the glass bulb became broken into many pieces, set up extreme inflammation resulting in continuous coughing and expectoration of blood and sputum; that defendants advised plaintiff that these symtoms indicated that plaintiff's uvula was enlarged and advised its amputation, and this plaintiff had done without benefit; that, on November 20, 1926, an X-ray disclosed the glass in the lung, and plaintiff, under advice of defendants, went to Mayo's Hospital at Rochester, Minn., for treatment, and there underwent two operations, one in November, the other in December, 1926, at which time the discoverable portions of the glass were removed; that prior to the removal of plaintiff's tonsils, he was a strong robust man, but by reason of the foregoing his left lung became highly inflamed, lacerated, and torn, and its functions greatly and severely impaired, and that he has suffered continuous and excruciating pain, and that his general health has been substantially undermined; that he has expended in necessary physicians' fees, railroad transportation for himself and attendant, and hospital fees, the sum of $727; that his damage is $30,-727.

The answers of defendants set up general denial coupled with an admission that they are practicing physicians.

Twenty-six assignments of error are made. These are presented under eight propositions:

1. It is contended that the trial court erred in overruling the motion of defendants to require plaintiff to make his petition more definite and certain. This motion sought to require plaintiff to set out whether he had a joint or separate contract as to the operation with defendants and the terms thereof. In answer plaintiff contends with force that there is no proper record showing the overruling of defendants' motion; that same is evidenced only by minutes of the clerk, citing Apple v. American National Bank, 104 Okla. 69, 231 Pac. 79; Randall v. Wadsworth (Ala.) 31 So. 555; Courtney v. Moore, 51 Okla. 628, 151 Pac. 1178; Jackson v. Fennimore, 104 Okla. 134, 230 Pac. 689; and Lillard v. Meisberger, 133 Okla. 228, 240 Pac. 1069.

Our decision adverse to defendants on this point is sustainable upon the broader ground that this is not an action upon breach of contract, but is essentially one in tort based upon negligence in the performance of a medical operation. Goble v. Dillon, 86 Ind. 328, 44 Am. Rep. 308; Wetzel v. Pius (Cal.) 248 Pac. 288; Krebenios v. Lindauer, 175 Cal. 431, 166 Pac. 17; Lotten v. O'Brien (Wis.) 131 N. W. 361; Spears v. McKinnon (Ark.) 270 S. W. 524; Jueschke v. Seeley, 98 Okla. 133, 224 Pac. 341; Wood v. Milwaukee & St. Paul R. Co., 32 Wis. 398; Morey v. Thybo, 199 Fed. 760. Under these authorities we conclude that the action was one in tort, and that defendants, under the allegations, could have been sued either separately or jointly.

It is argued also that the exact amount of medical and hospital fees should have been itemized. Ten Cate v. Fansler, 10 Okla. 7, 65 Pac. 375, Traction Co. v. Fore, 77 Okla. 234, 188 Pac. 327. The medical bill at Mayo's was $350, hospital $12, railroad fare $125, aggregating much less than the sum pleaded to cover these items. There is no counterproof. The evidence as to part only of these items was objected to and only upon the statutory ground, not upon the ground that same were not within the issues. No effort was made, or could have been made, it seems to us, to show defendants were either surprised or prejudiced by this proof. The defendants advised and made arrangements for this trip and treatment.

2. Defendant says the court erred in overruling Rhodes' demurrer to plaintiff's petition for that there was a misjoinder of causes of action; that one cause of action was against Rhodes and one against Geissler. Upon a careful examination of the petition, we conclude, as indicated above, that this is an action of tort and not one upon contract. Of course, many torts arise out of contracts and they are pleaded oftentimes as matters of inducement, or as show-

226

ing the relation of the parties, and their duties one towards the other, but in such cases the rights of the parties are not to be measured under the contract. It is true that a contract, either express or implied, lies back of and is the foundation for practically all tort actions, but this is a very general statement of the rule, and not to be accepted as the criterion for the purpose of determining whether a certain action is one in tort or upon contract.

The purpose of pleading the contract here must be obvious to show the relation of the parties, their duties with respect to each other, preliminary to the allegation that the defendants by negligent conduct injured the plaintiff. It will be noted that the acts of negligence of defendants complained of were represented to have been simultaneous and concurring, and all to have contributed to plaintiff's injury.

3. Complaint is made that the court permitted plaintiff to ask a prospective juror on voir dire, if he were chosen, if he would be willing to award plaintiff compensation adequate to cover the damage shown by the evidence. Several authorities are cited in support of defendant's contention from beyond the state, and, also, Jones v. State, 20 Okla. Cr. 154, 201 Pac. 664. The ground for this objection is that it was not a proper basis for examination, was prejudicial, calling in advance for the action of a juror on a hypothetical question, and stating a case which does not now exist and never did exist. This objection, we think, borders very closely upon the frivolous. There are no fixed rules as to the extent to which prospective jurors may be examined with reference to their qualifications, but it is regarded as fundamental that such examination is under the direction and control of the trial court, and that the extent to which the examination may be pursued is in a large measure within the sound discretion of such court, and that its action, except in clear case of abuse, will not be disturbed. The case of Jones v. State, supra, relied on by defendant, sets out clearly this rule. Cases supporting the contention of plaintiff here include Rice v. Ragan (Tex. Civ. App.) 129 S. W. 1148, wherein it was said:

"Questions to jurors on their voir dire as to whether they would allow full and fair compensation if they found for plaintiff were not improper as tending to commit them to a large verdict."

That case appears to be in point. In support of the general rule, see Swift & Co. v. Platte (Kan.) 74 Pac. 637; Van Skike

v. Potter (Neb.) 73 N. W. 295; Goldthorp v. Goldthorp (Iowa) 88 N. W. 944; Bank of Rolla v. Romine (Mo.) 136 S. W. 21; Stone v. Monticello Construction Co. (Ky.) 117 S. W. 369.

4. The defendant contends that the court erred in: (a) Admission of improper evidence; (b) abuse of discretion in limiting cross-examination: (c) abuse of discretion in permitting leading questions. The plaintiff was allowed to testify that defendant Geissler stated to plaintiff:

"I do not see how it was possible for it to get down there or you to get it in your mouth, unless after we had used this instrument, we had laid it over on the bed and after we had placed you on the bed, you sucked this in your mouth and sucked it right on down your throat."

Defendant Rhodes insists that this was prejudicial to him and was in no sense binding upon him, as he was not present and neither by his silence nor otherwise concurred therein. The record indicates that this conversation occurred at a conference between plaintiff and defendants. At the direction of Dr. Rhodes an X-ray picture had just been made of plaintiff's chest which disclosed the foreign substance in the lung, and, in discussing this, the defendants were advancing their ideas as to how it occurred. Plaintiff testified:

"He (Dr. Rhodes) said it broke off and got into my throat and I sucked it down my windpipe, and it had gone to my lung and lodged in my lung and the X-ray showed it up."

Under these circumstances the admission of this evidence was not error. Perhaps the evidence might be defended upon other grounds, but we think that indicated sufficient. Defendant argues that Geissler's statement is apparently, at most, only a conjecture which should bind no one. If so, could we not safely assume the jury so understood it? We find no merit in defendant's contention with respect to this evidence.

5. It is next urged that it was error to admit plaintiff's evidence as to his hospital treatment after suit. Plaintiff in his petition alleged that prior to the injury he was in good health; that since the operation complained of he has suffered continuous and acute pain; that his left lung and tissues thereof have been highly inflamed, lacerated, and torn, and its functions greatly impaired; that his general health has been undermined and impaired by reason of the matters complained of. We

think that, under these allegations and the supporting proof, no reversible error was committed by the court in this respect. Hornstein v. Yarrington, 110 Okla. 175, 237 Pac. 73. While there is proof to the effect that the plaintiff was treated in a hospital at Oklahoma City, the amount of expense incident thereto was not in evidence, and we must assume that same was not allowed. Plaintiff asked leave to amend his petition so as to include these expenses, but the court, upon objection, refused to permit the amendment, but held the evidence admissible under the petition as filed. It would seem that the amendment should have been allowed, with proper time given defendant, if requested, to meet the issue. It was not error to permit the plaintiff to show that he had been confined in a hospital in Oklahoma City after the petition was filed, as this tended to show the extent of the injuries. The court also permitted plaintiff to prove loss of time to the extent of six months, his salary being shown in the evidence. Loss of time, eo nomine, was not pleaded. While there is a conflict in the authorities on the question of permitting proof of lost time without allegation in the pleadings, nevertheless we think in practically all the jurisdictions it is held that where the injury alleged would necessarily import a loss of time, the direct averment in the pleadings may be dispensed with. 17 C. J. 1014, and authorities cited. Plaintiff's petition brings this case well within the rule. It is almost inconceivable that a man whose general health is impaired, whose lungs are infected to the extent of causing continuous, violent coughing, frequent hemorrhages and the spitting up of blood and sputum would not necessarily lose time.

"Evidence of loss of time or earnings or impairment of earning capacity, naturally and necessarily resulting from injuries described and act complained of, is admissible without specially pleading it." Littledike v. Wood (Utah) 255 Pac. 172.

The same doctrine is declared in Greenville v. Branch (Tex. Civ. App.) 152 S. W. 478. The injury to plaintiff was of a very severe nature, requiring two of the gravest of operations. The proof shows that medical men are prepared to perform these operations in but two places in the United States. When the first operation was interrupted, it was due to its severity which resulted in such loss of blood to the patient as to make it necessary to stop and renew the work 12 days later after the patient had been allowed to recuperate his strength. We hold that there was no reversible error in ad-

mitting evidence of lose of time under the pleadings here. Other objections are urged by defendant to the admission of evidence, but, after examining each of them, we are convinced that there was no error therein requiring a reversal of the judgment.

6. Contention No. 6 is that the demurrer of defendant to the plaintiff's evidence should have been sustained. Upon a careful study of the entire record, we conclude that there was ample evidence upon which to submit plaintiff's case to a jury. The rule is fundamental in this state that, in a law case, upon demurrer to the evidence, if there is evidence reasonably tending to sustain a verdict, the cause should be submitted to a jury.

7. It is next contended by the defendant that the court erred in refusing to give instruction No. 4 requested by defendant, which reads as follows:

"You are instructed in this case the plaintiff alleges that he employed the defendants and each of them to by a surgical operation remove and take out his tonsils, and does not allege that they or either of them were employed to treat or care for the plaintiff after the removal of the tonsils; and it is therefore conclusive in this case that the plaintiff employed each and both of the defendants, and that each and both of them were in the employ for the purpose of the removal of the tonsils, and there can be no charge of negligence against them or either of them for not caring for the plaintiff after the completion of the operation and the removal of the tonsils."

Somehow we are not able to see the pertinency or propriety of this instruction. The plaintiff does not complain that his tonsils were not removed. He complains because after removing his tonsils they left a part of their kit of tools on the inside where they did not belong.

Defendant says that Rhodes was entitled to have the jury instructed as to when his duties began and when they ended. It occurs to us that the time when his obligations to plaintiff ended is much more important here. His obligations began when he undertook to remove plaintiff's tonsils; they ought to have ended when and if he completed that job in a workmanlike and scientific manner and left plaintiff with no other handicap than an even break to recover from such proper operation. Certainly this was not accomplished when he left the plaintiff, a broken man, and perhaps a hundred times worse off than he was when the job was undertaken because of his negligence, and without any possibility of

negligence on the part of plaintiff. We have scant patience with the futile and fatuous arguments made in a situation like that presented here to the effect that defendant's duties were over when the tonsils were actually taken out without respect to how they were taken out, or what damage had been done to plaintiff in the process. The fact is, plaintiff would probably have died from the effects of an act which the jury has found and we think properly, to be defendant's negligence but for the timely and heroic treatment of plaintiff by others. Various operations are performed upon the human body. Sometimes gauze, bandages, forceps, screw-drivers, and the like are left on the inside of a helpless and unconscious patient. To argue in such cases that the skilled physicians who have last handled these implements are through with their duties when they cut out the appendix, or the gall bladder, or the spleen, or something else without respect to where their tools are left, is absurd.

8. The defendant complained next of the refusal of the court to give an instruction to the effect that all the facts alleged and proved did not constitute Dr. Geissler an employee of Dr. Rhodes. We think the facts with reference to this matter were properly covered in all essential respects by other instructions of the court, especially instruction No. 11. The defendant also requested several instructions withdrawing from the consideration of the jury certain specific acts of alleged negligence. Upon examination of the record we are of the opinion that the refusal of the court to give these instructions was not error, and further that there was evidence to support the instructions given and sufficient to warrant the refusal of those denied.

It was next contended that that portion of the statement of the issues by the court to the effect that plaintiff contended—

"That defendants carelessly and negligently permitted a small electric light bulb employed by them in said operation to become loose and unfastened and to fall into the mouth of plaintiff and thereby to be pulled and·breathed into plaintiff's left lung, and plaintiff further states that at said time it was well known to said defendants that said glass electric light bulb had escaped into the mouth, throat and lung of plaintiff and was unknown to plaintiff.

"And in that said defendants carelessly and negligently handled and manipulated the said electric apparatus to which said electric light bulb was attached in placing the same into the mouth and throat and per-

mitting the same to come into contact with the mouth and throat of plaintiff.

"And said defendants carelessly and negligently failed to extract said light bulb from the mouth and throat of plaintiff after the same had fallen from its attachment, and in that said defendant with full knowledge of said light bulb having passed into the throat and lung of plaintiff carelessly and negligently failed, neglected, and refused to notify plaintiff of the fact,"

—is erroneous.

It is our opinion that there is evidence tending to support the allegations set forth in the above quotation. Not all of it was direct. There was testimony of a witness who was present at the time of the operation with respect to certain acts, gestures and conduct of defendants, which, if true, would indicate to the average person that defendants had knowledge that the light bulb, or a portion thereof, had become detached from the apparatus and had lodged in or passed down the throat of plaintiff while he was unconcious.

We will not say that the court employed the best method in submitting the issues to the jury. It is usually not good practice to define the issues by quoting largely from the pleadings. However, in the instant case, the defendants offered no instruction defining the issues, and therefore cannot complain of the manner in which the same were stated. St. L.-S. F. Ry Co. v. Routh, 133 Okla. 168, 271 Pac. 835; Schmucker v. Clifton, 62 Okla. 249, 162 Pac. 1094. We might add that we do not believe from an examination of the instructions and of the statement of the court with reference to the issues, that the defendant suffered any prejudice which would warrant a new trial under the facts in this case.

Defendant makes the contention that the court erred in instructing the jury as follows:

"In the trial of this case you are told that there are three essential elements necessary for plaintiff to recover for negligence and injury:

"First. The existence of a duty on the part of the defendants to protect the plaintiff from negligence. * * * "

Defendant contends that the language should have been:

"The existence of a duty on the part of the defendants to protect the plaintiff from injury."

It is difficult for us to see how the defendant was prejudiced by the use of the

word "negligence" instead of the word "injury". If the court had told the jury that there must be the existence of a duty on the part of the defendant to protect the plaintiff from injury, rather than from negligence, it would have met the defendant's contention, but to protect from negligence is more restricted and a lesser duty than to protect from injury. It would seem, if there be error, that it was in defendant's favor and he should not complain.

Defendant's last contention is that the court's instruction No. 14 permitted the jury to consider, as an element of damage, whether or not plaintiff's injuries were permanent in character without supporting evidence. Many cases hold that the injuries may be of such nature as to indicate permanent injuries, and that, when such injuries are properly pleaded, the use of the word "permanent", or similar adjectives, becomes unimportant. Cases are to be found which hold that where pain and disability are suffered over a long period and continue up to the trial, it may be properly deduced that they will continue. The cases on these points cover a wide range and are interesting, but our question here is: Was the charge here under the record and proof reversible error? Each case in these circumstances must depend for the most part upon its own peculiar facts and pleadings. If we should go the limit and assume that there was neither pleading nor evidence of future pain or permanent injury, the effect would only tend to confuse the jury as to the amount of recovery. It is to be noted that, even in the instruction complained of, as well as in other parts of the charge, the jury is instructed that their verdict and finding must be based upon the pleadings and on the evidence. If, as defendant contends, there were no evidence as to future pain or disability, the jury should have so understood it. If there was confusion, it could result only in an excessive verdict. The defendants neither in the oral argument nor in their brief seriously pressed the contention that the verdict was excessive. The reason for this we think is obvious.

Defendants have by every effort challenged the sufficiency of the pleadings, sufficiency of the evidence, and the sufficiency of the entire record to support this judgment, and we have on that account been compelled to go over carefully the entire record, and have concluded that the defendant has suffered no injury from the charge complained of.

In Muskogee Electric Traction Co. v. Richards, Adm'r, 97 Okla. 61, 222 Pac. 265, subsection (b) of paragraph 3 of the syllabus is as follows:

"It is well settled by this court that where there is competent evidence to show damages alleged, and the verdict is not excessive, and when the complaining party does not request an instruction correctly stating the measure of damages, the cause will not be reversed because the measure of damages is inaccurately stated in the instruction. Lusk v. Kennedy, 73 Okla. 307, 176 Pac. 502.

The court in the opinion uses this language:

"We consider the plaintiff's argument answering the defendant on this point very fitting that the defendant is not in a position to complain of this error for the reason that the record discloses the defendant was represented by able counsel, who sat by when this instruction was given by the court and failed to point out the objectionable language and to render any assistance to prevent the error complained of, and contented themselves by simply saving an exception. This court has held that it is the duty of the defendant in damage suits to present to the court by way of requested instructions, or in some manner to call the court's attention to the defendant's theory as to what matters the jury may consider in assessing damages, and in case of failure on the part of the defendant to do so, and a verdict is rendered which is supported by the evidence, and which from the evidence is not excessive, the cause will not be reversed because the court's charge may not accurately define the measure of damages. This argument is supported by the following well-considered cases: Ft. Smith & W. Ry. Co. v. Moore, 66 Okla. 322, 169 Pac. 907; Lusk v. Kennedy, 73 Okla. 307, 176 Pac. 502; Dodson & Williams v. Parsons, 62 Okla. 298, 162 Pac. 1090; Potts' Ex'rs v. Zolinger, 79 Okla. 262, 192 Pac. 1099."

The court also quotes from Ft. Smith & W. Ry. Co. v. Moore, supra, and says, in substance, that courts will not look kindly upon such a contention where the party making the same made simply general objections to the instructions with the hope of preserving the record, and in case of an adverse verdict, setting the same aside, thus prolonging litigation, and, in many cases, by delay, defeating substantial rights.

The court uses this language:

"We do not think the jury could have been misled by these instructions, and without it is made to appear from the record that the instructions complained of possibly caused a miscarriage of justice, a reversal of the cause will not be ordered. Section 2822, Comp. Stat. 1921."

In the case of Dodson & Williams v. Parsons, 62 Okla. 298, 162 Pac. 1090, the court, in paragraph 4 of the syllabus, says:

"Where there is competent evidence tending to show damages alleged, and the verdict is not excessive, and when the complaining party does not request the trial court to give instructions correctly stating the measure of damages, a cause will not be reversed because the court's charge does not accurately define the measure of damages."

This case cites Midland Valley Ry. Co. v. Kersey, 59 Okla. 9, 157 Pac. 139, and Planters' C. & G. Co. v. Penny, 53 Okla. 139, 155 Pac. 516, in which last case the third paragraph of the syllabus is as follows:

"In a suit in damages for personal injuries, where the amount recovered was not excessive, error in instructions on the measure of damages is harmless."

This case cites Great Western Coal & Coke Co. v. Coffman, 43 Okla. 404, 143 Pac. 30, and in the opinion the court says:

"In support of which rule we cited 38 Cyc. 1814, where cases from half the states of the Union are cited as authority for the proposition. Quoting approvingly from Chicago, R. I. & P. Ry. Co. v. Archer, 46 Neb. 914, 65 N. W. 1043, we said: 'We think the true rule is that where the damages are unliquidated, and the jury has been by the instructions permitted to consider an element not sustained by the evidence, the error should be treated as harmless, where, from an inspection of the evidence and the verdict, it is reasonably certain that the jury was not misled, and that it allowed nothing on account of the element improperly submitted to it. We think the case discloses a state of affairs within the rule.' "

The court, in Planters' Cotton & Ginning Co. v. Penny, supra, said further:

"And in Suttle v. Brown, 137 Ill. App. 438, where in the syllabus it is said: 'Errors in ruling upon instructions will not reverse, where it appears that such errors refer solely to the question of damages, and the damages awarded were amply sustained by the evidence.' "

Upon consideration of the question whether the verdict is excessive, it should be noted that in the case at bar the facts are indeed peculiar. Plaintiff, a robust young man, of fine health, applied to defendant to have his tonsils treated or removed. This was in October, 1926. The defendant and his assistant accepted the employment, placed the plaintiff under an anaesthetic and removed his tonsils. Almost immediately thereafter plaintiff developed a persistent cough accompanied with expectoration of blood and mucous and with frequent and dangerous hemorrhages. More than a month later it was discovered by an X-ray examination that a broken electric light bulb was lodged in plaintiff's lung. This resulted in frequent and serious hemorrhages, almost continuous coughing and spitting of blood, and a resultant infection at the base of the left lung. The evidence is conclusive that plaintiff was reduced from robust health to such condition that he could not travel safely alone, but required the help of a practical nurse. He was carried to one of the two hospitals in the United States prepared to perform the necessary operation for removal of the glass bulb. He underwent the first operation and part of the glass was removed, but on account of excessive blood flow and weakness, further operation was delayed about two weeks when so much of the balance of the bulb as could be located was removed.

Plaintiff's condition was somewhat relieved, but as late as the fall of the following year plaintiff was very frail of body, spat up foul-smelling, blood-tinged, purulent sputum, and was compelled under physician's orders to drain the area frequently by dragging his body face downward from a high bed to the floor. There was some impairment of resonance of this lung and limitation of diaphramatic excursion on the left side. These two major operations were preceded by the removal of plaintiff's uvula advised by the defendant, but this gave no relief.

Plaintiff's condition was very grave and contained all the elements of actual damage as well as the necessary apprehension of the greatest peril. Can it be said that a verdict of $8,000 is excessive? We think not. Defendant's counsel with all his skill has not developed a substantial defense. Any average jury would, under this record, find for plaintiff. This court has several courses open to it: First, to grant a new trial; second, to order the issue as to damage alone retried; third, to require a remittitur if the amount should seem excessive under the proof; or fourth, to affirm the case if the court is of the opinion that the defendants were not harmed by the instruction of the court, inadvertent or otherwise, that the jury might consider as an element of damage any permanent injury or future pain to plaintiff.

Under this record the issues as made by the pleadings were read by the court to the jury.

The evidence on the matter of injury is comparatively simple. The medical man did not indicate in terms that there

would be either permanent injury or future suffering. The instruction indicated that the plaintiff's recovery must be supported by his pleadings, as well as his proof. There was no direct instruction as to the measure of damages asked by defendant, nor was any lack of proof as to permanent injury pointed out to the court at the time, although every page of this record emphasizes the skill of counsel for defendant. Under these facts and this record, we hold that the defendant was not harmed. Certainly there has been no miscarriage of justice in this verdict, taking into account the actual damage suffered without respect to any future injury.

If litigation, in itself, were a desirable thing or the end to be sought, perhaps a majority of our cases appealed would require reversal, but the Legislature has, section 319, C. O. S. 1921, wisely and well defined the power and duty of this court with reference to what errors are reversible.

We are referred to the case of Jones v. Sechtem, 131 Okla. 155, 268 Pac. 201, as controlling. Without attempting to draw any fine-spun distinction, it is perhaps sufficient to say that, in that case, the court was dealing with a case in which the injuries were treated as very complicated and of a subjective nature, and it was there held that, since there was no expert evidence tending to show that the head injury would be permanent, it was error for the court to submit the question of its permanence to a jury. We do not question the holding in that case, but the case at bar presents a different situation—one where the injury and damage are actual and terrible and not speculative or the subject of opinion, but all the evidence both lay and expert is at one.

We think the court should reverse a case either generally, or as to the issue of damage only, or require a remittitur where, after an inspection of the entire record, it is of the opinion that a prejudicial error as to assessment of damage has been made, but certainly it would be idle to argue that we should pursue either course where we think the jury was not misled, and where the amount of recovery is moderate according to the uncontradicted evidence.

We think substantial justice has been done, and the judgment is affirmed.

LEACH, HERR, TEEHEE, HALL, and REID, Commissioners, concur. DIFFEN-DAFFER, Commissioner, dissents.

By the Court: It is so ordered.