## FT. SMITH & W. R. CO. v. MOORE.

No. 7918—Opinion Filed Dec. 11, 1917.

(169 Pac. 904.)

1. **Railroads — Crossing Accident —Question for Jury—Negligence.**

In the instant case, under the testimony, there were issues of fact both as to negligence on the part of the railway company and as to contributory negligence on the part of the plaintiff, and the court did not err in submitting the entire question of negligence to the jury.

2. **Appeal and Error—Instructions — Presumption—Reversal.**

Where the trial court in its instructions correctly stated to the jury the elements of damages that might be considered, and did not intimate that the jury might take into consideration any other matters in assessing damages, it will not be presumed that the jury considered other matters than those submitted by the court. A cause will not be reversed because the court did not specifically tell the jury not to consider other matters when the damages assessed are reasonable, and the defendant did not request the court to so instruct the jury.

3. **Damages—Loss of Earning Capacity—Instruction.**

In a personal injury suit, if there is any evidence from which the jury may, assisted by their common knowledge, fairly assess damages on account of decreased earning capacity, it is not error for the court to instruct the jury that they may consider decreased earning capacity in assessing damages.

4. **Appeal and Error — Instruction—Damages—Reversal.**

It is the duty of the defendant in a damage suit to present to the court by way of

requested instruction or in some manner to call the court's attention to the defendant's theory as to what matters the jury may consider in assessing damages. In case of failure on the part of the defendant so to do, and a verdict is rendered for damages which from the evidence is not excessive, and the defendant has made no assignment of error that the verdict is excessive, a cause will not be reversed because the court's charge may not accurately define the measure of damages.

## 5. Trial—Crossing Accident — Negligence —Instructions.

While, as a general proposition of law, a moving railway train, on account of its momentum, has the right of way at a public crossing, yet in case where there is evidence to show that, when the plaintiff was first discovered by the engineer of the approaching train, the team of plaintiff was on the main railway track, having just passed over a switch higher than the main track which prevented the plaintiff from backing his wagon and permitting the train to pass, and where the engineer admits that when he discovered the plaintiff's peril he set the air brakes, but released the same because he saw the plaintiff's team pause, there also being testimony from which the jury might reasonably conclude that, if the air brakes had remained set, the train could have been stopped before striking the plaintiff, it is not error for the court to refuse to instruct the jury that the defendant was not required to stop its train and give precedence or right of way to the wagon in which the plaintiff was riding to pass over the crossing first; there being other instructions given which fairly covered the issues.

## 6. Same—Requested Instruction — Refusal.

In a suit brought by the plaintiff for personal injuries sustained at a public railway crossing in which the plaintiff testified that he listened and did not hear the bell or whistle sounded, and that the same was not sounded, and was corroborated by the testimony of other witnesses, and the engineer on the train and other witnesses testified that the engineer rang the bell and sounded the whistle, it is not error for the court to refuse a special instruction requested by the defendant to the effect that, as a matter of law, the testimony of the plaintiff does not contradict such positive testimony of the engineer and other witnesses.

(Syllabus by Stewart, C.)

Error from District Court, Okfuskee County; Geo. C. Crump, Judge.

Action by John Moore against the Ft. Smith & Western Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Warner & Warner, for plaintiff in error.

John L. Norman and S. L. O'Bannon, for defendant in error.

Opinion by STEWART, C. The defendant duly appeals from a judgment of the district court of Okfuskee county for the sum of $1,250 in favor of the plaintiff because of injuries alleged to have been received on account of the negligence of the defendant at a public crossing over the defendant's railway in the town of Castle, Okfuskee county. The defendant, having filed demurrer which was overruled, answered by general denial and by plea of contributory negligence. The defendant urges as ground for reversal: (1) Error of the court in overruling defendant's demurrer to the evidence; (2) error of the court in giving instructions No. 16 and No. 25 to the jury; (3) error of the court in refusing to give instructions numbered 3, 6, and 7 requested by the defendant; (4) error of the court in admitting the testimony of the witness Palmer; (5) error of the court in refusing to grant a new trial and in rendering judgment for plaintiff.

We think, and so hold, that there is evidence to support the judgment, but the defendant says it was the duty of the court to give to the jury defendant's requested instruction No. 3, which reads as follows:

"You are instructed that it was the duty of the plaintiff on approaching the defendant's track to look and listen in each direction before going upon or attempting to cross over said track, at a point where looking and listening would have been effective, and that he should continue to look and listen until he crossed over the said track; and if you find from the evidence that the said John Moore failed to look and listen in the manner as above stated, before attempting to go upon or over said track, then the court instructs you, that, even though the defendant might have been negligent, it will be your duty to return a verdict for the defendant."

The instruction would be, in effect, a finding by the court on the issue of contributory negligence.

The opinion of this court in St. L., I. M. & S. Ry. Co. v. Gibson, 48 Okla. 553, 150 Pac. 465, cited by defendant is not in point so far as the facts in the instant case are concerned. In the syllabus it is said:

"When plaintiff's own evidence is that deceased had waited to see the train pass, knew it was approaching, and ran upon the track immediately in front of and in full view of the moving cars, it could not be said the failure to ring the bell and sound the whistle was in any manner responsible for his going upon the track, and there is

no question, on that phase of the case, to submit to the jury."

In other words, the court merely held that there was a failure to show negligence on the part of the railway company resulting in the injury. The object of giving alarm is to apprise those near the crossing of an approaching train. The admitted fact being that the deceased knew of the proximity of the train before attempting to cross, it could not be said reasonably that the sounding of the bell or whistle would have prevented the deceased from going upon the track, and that the failure to sound the same was a cause of the injury. In the case at bar, under the evidence, there were questions of fact to be determined both as to negligence on the part of the railway company and as to contributory negligence on the part of the plaintiff. The testimony of the plaintiff, corroborated by the testimony of other witnesses, is to the effect that immediately preceding his attempt to cross the railroad the plaintiff had unloaded his cotton at a gin near the railroad and driven off the scales; that he was about 30 or 40 feet from the railroad; that he looked up and down the railroad both ways and listened before he started; that he did not see nor hear any train; that no whistle was blown and no bell rung as required by law; that there were a number of box cars standing on the track which, with a seedhouse at the crossing and near the switch, obstructed the view; that it was necessary to cross the switch before crossing the main line; that the center of the track of the switch was about 21 feet from the center of the track of the main line; that the track of the switch was from 2½ to 3 feet higher than the main track; that, after stopping, looking, and listening the plaintiff drove upon the switch, and as he crossed the switch saw the train approaching; that his horses were already upon the main line, and that it was impossible for him to back, on account of the elevation of the switch, his only method of escape being to cross the main line, if possible, before the train reached the crossing; that he made an attempt to do so; that just as his wagon was crossing the main track the hind part was caught by the engine, and the plaintiff thrown violently into the air, afterwards striking the ground. Though the engineer testified that he sounded both the whistle and the bell as required by law, a number of bystanders swore that neither the bell nor the whistle sounded until the danger of the plaintiff actually appeared. The engineer further testified that when he saw the plaintiff he set the air brakes,

but the plaintiff paused, and he released the air brakes. The jury passed upon the credibility of the witnesses and the weight of the testimony, and we believe from all the facts and circumstances in evidence that the jurors were justified in concluding that the injury resulting from the negligence of the defendant without contributory negligence by the plaintiff. The defendant cites many authorities which we have examined and which in general correctly defines the respective duties of railroad companies and the public at railway crossings, but none of such authorities are at variance with the views we express, especially in view of the constitutional provision in this state making contributory negligence a question of fact for the jury. The jury was instructed both as to the issue of defendant's negligence and that of plaintiff's contributory negligence. The court did not err in submitting the questions of negligence to the jury.

Next defendant assigns as error the giving of paragraphs numbered 16 and 25 of the court's general instructions to the jury, which read as follows:

Paragraph No. 16:

"You are further instructed that, if you believe by a fair preponderance of the evidence that the plaintiff approached the crossing with that degree of care and caution that an ordinary prudent man would exercise under like circumstances, and the defendant failed, neglected, and refused to use that degree of care that an ordinarily prudent man would use under like circumstances and conditions, and the defendant carelessly and negligently approached said crossing in the manner and way alleged in plaintiff's petition, and that the defendant did not ring the bell or sound the whistle, and the failure of the defendant to approach said crossing in the way and manner as herein explained, and that the negligence on the part of the defendant in failing to ring the bell or sound the whistle, as alleged in plaintiff's petition, was a direct and proximate cause of the injuries sustained by the plaintiff herein, then you will find for the plaintiff in any sum you may think him entitled to, not to exceed the sum of $2,999."

Paragraph No. 25:

"If you find for the plaintiff, then you may assess his damages, if any, and you may take into consideration the nature of the injury, if any, whether permanent or temporary, the bodily pain and mental suffering, if any, the amount of the decrease in his earning capacity, if any, and fix such sum as in your judgment, guided by the testimony in the case, as would be a just compensation to plaintiff for injuries sustained, not to exceed the sum of $2,-999."

The objection which defendant urges to instruction No. 16 is that the same does not define the measure of damages, but merely authorizes the jury, in case of finding for the plaintiff, to assess the damages in any sum to which the jury may think the plaintiff entitled, not to exceed $2,999, the amount prayed for. If paragraph 16 were the only attempt of the trial court to define the measure of damages, there might be merit in the objection, but in paragraph No. 25 the court advised the jury as to the elements of damages to be considered. The defendants contend that paragraph No. 25 does not limit or restrict the jury to the legal elements of damages, but by inference permits the jurors, at their caprice, to consider other matters not mentioned in assessing damages, and further that there is no evidence showing decrease in earning capacity of the plaintiff. The court clearly and correctly points out elements which may be considered in assessing damages in personal injury cases; there is no intimation in the instruction that the jury may take into consideration other matters than those named. It should be presumed that the jurors as a whole were men of at least ordinary intelligence, and that they considered only such elements as were authorized by the instruction. However, if there was no evidence to support damages on account of decreased earning capacity, the court should not have instructed as to such element. In this connection we will say that there was evidence showing that the defendant's arm was broken, his back and thigh wrenched and injured, his wrist and leg cut, and his head and face bruised; that the agent of the railway company called defendant's local surgeon to treat the plaintiff, and because of such surgeon's failure to set the plaintiff's arm he would not have the full use of the same again; that the surgeon told the plaintiff that his arm was not broken and that he was not badly injured; that afterwards, at his own expense, the plaintiff procured another surgeon to examine him, who was offered as a witness, and testified to permanent injuries and inability, by reason thereof, to follow his usual occupation; that the plaintiff was a hard-working and respected negro farmer, making about 25 bales of cotton and from 300 to 500 bushels of corn per year; that he was 44 years of age, and had never been sick in his life before. There was no evidence as to the value of the crops raised nor as to what the value of future crops might be. It is impossible to prove with exactness what a farmer can earn from year to year, or what would be the value of

crops grown, but we think the jurors had a right to take into consideration the plaintiff's age, his former physical condition and habits, the previous products of his labor, and the extent to which he will be prevented from following his former avocation, use their common knowledge, and, exercising sound judgment, determine his reasonable earning capacity and assess such damages as would reasonably compensate him for the detriment caused. Such damages cannot be proven with mathematical accuracy. The instruction could have been framed with greater precision, and the testimony as to decreased earning capacity might have been more fully developed. If the damages awarded were excessive or the defendant had called the trial court's particular attention to the objection now being considered, we would be inclined to attach more weight to the same, but the defendant did not point out to the trial court any special objection to the instruction given on the measure of damages, and did not present its theory by a requested instruction. Nor is there any assignment of error or suggestion by the defendant that the damages awarded were excessive. Considering the testimony as to injuries received, the damages assessed are reasonable. It appears that the jury acted fairly. If the instruction as to the measure of damages had been framed according to the identical notions of defendant's counsel expressed for the first time in their brief, we do not think that the amount assessed would have been less. The defendant was represented by thoroughly skilled counsel, familiar by long experience with the rules of law governing the matters involved, and it ought not to be the policy of this court to indulge them in the habit of sitting idly by and permitting the trial court to give slightly inaccurate instructions as to the measure of damages from which it does not appear that prejudice has resulted, merely making general objections with the hope of preserving the record, and, in case of an adverse verdict, setting the same aside, thus prolonging litigation, and in many cases, by delay, defeating substantial rights. In Dodson & Williams v. Parsons, 62 Okla. 290, 162 Pac. 1090, we said in the syllabus:

"When there is competent evidence tending to show damages alleged, and the verdict is not excessive, and when the complaining party does not request the trial court to give an instruction correctly stating the measure of damages, a cause will not be reversed because the court's charge does not accurately define the measure of damages."

In Planters' Cotton & Ginning Co. v. Penny, 53 Okla. 136, 155 Pac. 516, Mr. Justice Turner, speaking for this court, following Great Western Coal & Coke Co. v. Coffman, 43 Okla. 404, 143 Pac. 30, an opinion by the same writer, lays down the rule:

"In a suit in damages for personal injuries, where the amount recovered was not excessive, error in instructions on the measure of damages is harmless."

In line with former holdings of this court Commissioner Galbraith said in Midland Valley R. Co. v. Kersey, 59 Okla. 9, 157 Pac. 139:

"In an action for personal injuries, where there is no assignment of error that the verdict was excessive, error in an instruction relating to the measure of damages is harmless."

In support of the proposition that the trial court committed prejudicial error in its charge as to measure of damages the defendant cites Ft. Smith & Western Ry. Co. v. Green, 56 Okla. 585, 156 Pac. 349. To hold that the case cited supports defendant's contention would be to overrule the two opinions written by Justice Turner and other opinions of this court following the rule in those cases. In Ft. Smith & Western Ry Co. v. Green it seems that the attention of the learned commissioner who wrote the opinion was not directed to the former holdings of this court on the question. But that case and the one at bar are not parallel. In the case cited the trial court did not attempt in any manner to define the elements of damages. In the opinion, before considering such failure of the trial court, it had already been held that the case should be reversed for other reasons, and we take it that, for the guidance of the trial court in case of a new trial, the duty to define the measure of damages was pointed out. At any rate, the opinion will not be construed to change an established rule so well supported by high authority and founded in reason and justice. The rule, of course, applies particularly to cases involving unliquidated damages, and is in line with many authorities from other jurisdictions, among which we cite: C., R. I. & P. Ry. Co. v. Archer, 46 Neb. 914, 65 N. W. 1043; Suttle v. Brown. 137 Ill. App. 438; Toledo, etc., Ry. Co. v. Ferguson, 134 Ill. App. 606; Georgia R. & B. Co. v. Flowers, 108 Ga. 795, 33 S. E. 874; B. & O. Ry. Co. v. Pumphrey, 59 Md. 390; Inland Steel Co. v. Ilko, 181 Ind. 72, 103 N. E. 7; Carroll v. Centralia Water Co., 5 Wash. 613, 32 Pac. 609, 33 Pac. 431; Pettis v. Brewster, 94 Ga. 527, 19 S. E. 755; Cleveland, etc.,

Ry. Co. v. Newell, 104 Ind. 264, 3 N. E. 836, 54 Am. Rep. 312; Flanagan v. B. & O. Ry. Co., 83 Iowa, 639, 50 N. W. 60; Lee et al. v. Mo. Pac. Ry. Co., 195 Mo. 400, 92 S. W. 614; Weick v. Doughtery, 139 Ky. 528, 90 S. W. 966, 3 L. R. A. (N. S.) 348; Finucane v. Ill. Cent. Ry. Co., 169 Ill. App. 175.

The defendant next assigns error of the trial court in refusing to give the following instruction:

"You are further instructed that the defendant was not required to stop its train and give precedence or right of way to the wagon in which plaintiff was riding to pass over the crossing first; and if you find from the evidence that the plaintiff knew, or by exercising ordinary care could have known, that defendant's train was approaching said crossing, then you are instructed that it was the duty of the plaintiff to wait for the defendant's train to pass over the same, and if he failed to do so, your verdict should be for the defendant."

In the case now before us the evidence of the railroad engineer shows that the approach of the plaintiff to the crossing was not discovered by the engineer until plaintiff's horses were upon the main track of the defendant company, upon which the train was moving; hence that part of the requested instruction which says "that the defendant was not required to stop its train and give precedence or right of way to the wagon in which plaintiff was riding" would be misleading, and the latter part invades the province of the jury in determining the question of contributory negligence. Generally it is not the duty of an engineer to stop a train for passing wagons, but when the engineer in the case at bar discovered the plaintiff's peril, it was his duty to do all in his power to stop the train and permit the wagon to pass, if necessary. The engineer, according to his own testimony, first set the air brakes, and then released the same while the plaintiff was in peril. The releasing of the air brakes under the circumstances was negligence without which it is possible the injury may have been averted. The requested instruction, if given by the court, might have been misconstrued by the jury, and applied, not to the general duties of the railway company at railway crossings, but to the engineer's duty under the particular circumstances. We are also of the opinion that the court's general instructions fairly cover any legal principle in the requested instruction applicable to the facts in the case. In view of the court's general instructions and the evidence, the court did not err in failing to give the requested instruction.

The defendant complains that the court erred in admitting the following testimony of the witness Palmer:

"Q. Do you know what kind of crop he raised? A. Yes, sir; I know. Q. What kind of crops did he raise, Mr. Palmer? A. You mean whether good or bad, don't you? Q. Yes. A. They were good ones."

Such testimony is merely an expression of an opinion of the witness and incompetent, but we think the error in admitting the same was harmless. There was competent testimony showing the quantity and kind of crops raised by plaintiff. The jury did not have to rely upon the opinion and conclusions of the witness, and his testimony could not possibly have influenced their verdict.

The defendant says that the court erred in refusing to give the following requested instruction:

"You are further instructed that there is direct and positive testimony of the engineer in charge of the locomotive and of other witnesses to the effect that the bell and whistle on the locomotive were sounded at the time the said train struck the wagon in which plaintiff was riding, and had been sounded for some time previous thereto. There is testimony to the effect that the plaintiff, riding in his wagon, listened and did not hear the ringing of the bell or the blow of the whistle. You are instructed as a matter of law that the statement made by the plaintiff, who was in the wagon, does not contradict the statement made by the engineer in the locomotive and other witnesses."

The instruction, if given, would have amounted to a charge on the weight of the testimony. Several witnesses testified for the plaintiff, and stated that the bell did not ring and the whistle was not sounded until the train had practically reached the crossing; that neither the bell nor whistle was sounded at the "whistling post" erected by the railroad company. Such testimony is not purely negative, but, whether positive or negative, it was the province of the jury to determine the facts after considering all the evidence in the light of the surrounding circumstances. If persons are in hearing distance of an alleged sound, and it does not appear that their hearing is impaired, their testimony as to whether or not a sound was made should be considered by the jury. If, when the engineer on a railway train testified that he sounded the bell or whistle for a crossing, his testimony could not legally be disputed by other witnesses testifying that they were close enough to hear and that the bell was not

rung or the whistle blown, in many cases there would be no way of establishing this character of negligence.

The trial court did not err in overruling the motion for a new trial.

The judgment is affirmed.

By the Court: It is so ordered.