## OKLAHOMA NATURAL GAS CORP. et al. v. SCHWARTZ.

No. 19453.   Opinion Filed Oct. 14, 1930.

Rehearing Denied Dec. 23, 1930.

Poe & Lundy, for plaintiffs in error.

E. F. Cadwell and Font L. Allen, for defendant in error.

REID, C. The plaintiff, John R. Schwartz, sued the Oklahoma Natural Gas Corporation, a corporation, and Clarence T. Gibbons, defendants, for injuries received by the plaintiff in a collision between an automobile in which plaintiff was riding and an automobile belonging to the gas company and driven by Gibbons. The verdict and judgment were for $5,000 in favor of the plaintiff, and the defendants have brought this appeal.

The first proposition urged is that the court erred in overruling defendants' objection to the introduction of testimony by plaintiff. There was no demurrer to the petition, but by this method defendants attack its sufficiency. As there are also other questions raised on the petition, we omit formal parts thereof and quote from it somewhat at length as follows:

"That on or about the 27th day of January, 1927, the plaintiff was traveling in a Ford automobile, owned by the plaintiff and being operated and driven by the plaintiff's son; and said automobile was moving at an approximate speed of fifteen (15) miles per hour in a easterly direction upon and along the south side of Eighth street at or near the intersection of Cheyenne avenue in the city of Tulsa, Tulsa county, Oklahoma; that at the intersection of said street and avenue, an automobile owned and belonging to the defendant Oklahoma Natural Gas Corporation, and being operated and driven by the defendant Clarence T. Gibbons, an agent, servant, and employee of the defendant Oklahoma Natural Gas Corporation, ran into and upon the plaintiff's automobile in which he was riding, thereby causing a collision between said automobiles; that said collision arose in the following manner:

"That after plaintiff's automobile had entered the said intersection, the driver of plaintiff's automobile saw the defendant's automobile approaching from the south upon Cheyenne avenue at a rapid and excessive speed of approximately forty (40) or forty-five (45) miles per hour; the driver of plaintiff's automobile immediately turned said car to the left and toward the northeast corner of said intersection, and had passed over and out of Cheyenne avenue and was entirely on the north said of Eighth street and east of Cheyenne avenue when the said defendant's automobile struck and collided with plaintiff's automobile.

"That as a result of said collision plaintiff's automobile was knocked from the street, overturned upon the parking and completely demolished, and plaintiff was thrown from and under said automobile, thereby plaintiff sustained a deep gash on the left side of the top of his head, causing a severe shock and concussion of the brain; bruising, lacerating and tearing the tendons, ligaments and muscles of his neck, back and left shoulder; plaintiff suffered serious internal injuries which caused plaintiff great and excruciating physical pain; that as a result of said injuries above described, plaintiff suffered great and excruciating physical pain and mental pain."

The petition further alleged that plaintiff had incurred $400 expense on account of his injuries, for hospital bill and doctor's bill, and nurse hire; that he was 53 years o'd when injured, an able-bodied man earning from $12 to $15 per day as a plumber, but that since the accident he had been unable to work and would not be for some time thereafter. He asked judgment for $10,400.

While we have frequently held that an objection by the defendant to the introduction of any testimony by plaintiff is in the nature of a demurrer, raising the sufficiency of plaintiff's petition, yet this method of attacking a petition is not favored by this court, as such practice tends to prevent trial upon the merits. Therefore the petition will be liberally construed as against such objection.

Mires v. Hogan, 79 Okla. 233, 192 Pac. 811; Good v. First National Bank of Roff, 88 Okla. 110, 211 Pac. 1051; Geck, Ex'r, et al. v. Security State Bank, 133 Okla. 67, 271 Pac. 152.

No extended discussion is necessary to show that a party, as alleged here, who drives an automobile 40 or 45 miles per hour across the intersection of streets in a city and against the car of another is prima facie guilty of negligence, aside from any statute condemning such acts, but see S. L. 1923, ch. 16, sec. 2. And as the other allegations entitling plaintiff to recover were sufficient, the court did not err in overruling defendants' objection.

The petition alleged that the father owned the car in which he was riding and that it was being driven by the son when the accident occurred. Each of them, however, was permitted on the trial to say that the son owned the car, was driving it, and that the father had no control over or ownership in it. Defendants contend this error. Technically, the admission of this evidence was erroneous, but we have looked in vain in the briefs and argument of counsel for the defendants for a substantial reason why this was harmful to defendants. No issue is made showing that if the father had owned the car, as alleged, the liability of the defendants would have been lessened or different in any respect. Plaintiff''s testimony does show that just preceding the accident, when he observed the speed with which Gibbons was driving, he told his son to "step on the gas" in the hope of avoiding a collision; but the son testified that he did not hear this. Of course, if the parties to the case were reversed, and the suit was by Gibbons against the elder Schwartz for damages, then it might be a very material question as to whether plaintiff owned the car and it was being driven by his son for plaintiff's benefit; or, that the car was owned by the son and the father only a guest. But, as the case here arises, the ownership of the car was immaterial; that is, as the whole proof stands.

The question is controlled by that part of section 312, O. O. S. 1921, which is as follows:

"No variance between the allegations, in a pleading, and the proof, is to be deemed material, unless it has actually misled the adverse party, to his prejudice, in maintaining his action or defense upon the merits."

And, the error not affecting the substantial rights of the defendants, we are prohibited by section 319, C. O. S. 1921, from reversing the case on account of it.

The defendants next contend that the court erred in permitting a chiropractor to testify as an expert witness and give his opinion as to the condition of plaintiff and the effect and duration of his injuries. Defendants urge that the witness did not qualify even as a chiropractor, and further, that his testimony related to medical facts, which could only be shown by a physician or surgeon.

The plaintiff's evidence showed that the accident happened in substantially the manner set out in his petition, and that he sustained the injuries alleged therein, except that the evidence shows that immediately after the accident plaintiff was taken to a hospital, where his wounds were treated, and he said that he regained consciousness a short time thereafter. The evidence is not clear on the question, but it indicates that he remained in the hospital as much as ten days. His own testimony was more specific in detailing his injuries. He said that his head was scalped from some cause, from hitting the curb he thought; that he was cut and scalped down the side of his head and under the jaw and all the ligaments were torn; he said, "In other words, I could not move my head or anything and my back was injured so that if I tried to move my head or anything I get weak and cannot do anything." He said he then had pains and still continued to have them in his neck from his head down to about half way between his shoulders; sometimes in his hips; that he had not been able to do any work since the injury; that he was regularly employed when he was injured and had been for sometime prior thereto, making as wages, for time and overtime, as a plumber, about $75 per week; that he was 53 years old and had never been ill prior to the accident. (The trial was had November 17, 1927.)

As to his qualifications the chiropractor testified that the profession of chiropractic "treats of the misalignment of bones and the adjusting of them back to place, the vertebrae, because of partial misalignment pressing on nerve that control the anatomy of the body; that is both structural and muscular"; and that his profession also treated of general anatomy; that he had attended the Palmer Chiropractic School, was a graduate thereof, taking a three years' course, and licensed to practice in this state. He said he was not a graduate of any school of medicine or surgery, and not licensed in either of said professions. This witness was called to attend the plaintiff at the hospital on the day the accident occurred, but he said he had

not had an opportunity to give him a complete examination at that time. He saw the plaintiff on February 1st thereafter, when he did examine him carefully. He said that he found extreme swelling in plaintiff's neck, drawing of the ligaments and tendons and apparent pain in the movement all through the upper part of the back and neck and swelling all through that area; that there was a misalignment of the vertebrae in the upper part of the neck toward the base of the skull, which would not stay in place after having been put in alignment; that the ligaments and muscles of the neck were not strong enough to hold the vertebrae in place at that time. He treated the plaintiff many times and until July 25, 1927, when plaintiff went away, and he did not see him again until October 18th, following, when he examined him again and found his condition improved. He said that at times when plaintiff walked he apparently became unsteady in his movements and slightly dizzy, which he attributed to the condition of his neck, the first two vertebrae controlling the equilibrium in the brain. He said that in his judgment the condition of the plaintiff was slowly being rectified, but could not say he would ever be able to assume his former occupation, because the lasting effects of the injuries stood out rather plainly; that he would not be able to assume it for some time.

In this connection we may here state that the witness testified on cross-examination that his profession held to the theory that practically all human illness and ailments were traceable to misalignments of the backbone; also, that he had treated plaintiff for a misaligned vertebra previously to the injury in question, but said that the trouble was not in the same place as this.

There was no regular physician or surgeon who had examined the plaintiff introduced by either party as a witness in the case. However, the defendants moved for a continuance on account of the absence of a physician and surgeon whom it was alleged would testify that he examined plaintiff soon after the accident and that plaintiff suffered a slight laceration in the left forehead and temple, and complained of a slight soreness in the back of his neck, and that from his examination the plaintiff sustained only a slight injury. The motion was denied by the court and the purported testimony was admitted as a deposition of the witness. This testimony and that of the chiropractor constitute the only expert testimony in the case,

if the chiropractor was an expert on the question.

We have said that an expert is one possessing, with reference to a particular subject or department of human activity, knowledge not acquired by ordinary persons. Yates v. Garrett, 19 Okla. 449, 92 Pac. 142; Cook v. First National Bank of Duncan, 110 Okla. 111, 236 Pac. 883.

The Legislature of this state has provided for licensing of chiropractors by a board of examiners appointed by the Governor of the state. Chapter 7, page 12, Session Laws 1921.

Section 4 of the act provides that the applicant shall be examined upon the following subjects:

'Chiropractic Principles, Anatomy, Histology, Physiology, Symptomatology, Orthopedia, Chemistry, Spinography, Diagnosis, Sanitation and Hygiene, Pathology, Public Health Service and Adjustology."

The case of Voight v. Industrial Commission, 297 Ill. 109, 130 N. E. 470, was a proceeding before the Industrial Commission in which the claimant sought compensation for an injury to his spine. The chiropractor was a graduate of the same school as is the witness in this case and was licensed to practice under the law of Illinois. She had treated claimant and testified as to his condition and gave her opinion as to the extent of his injury. The court held the witness qualified, saying in the syllabus:

"In a proceeding under the Workman's Compensation Act, a chiropractor, licensed to practice under the Drugless Heating Act, was competent to testify as to the extent of the injury, she testifying that physicians of her school were especially trained to diagnose and treat posterior and lateral derangements and ailments to the spine, since any one who is supposed to have knowledge and skill in diagnosing and treating human ailments is qualified to testify as an expert, if his learning and training show that he is qualified to give an opinion on the particular questions in issue.

"The weight of testimony of medical expert is to be determined by the character, capacity, skill, and opportunity of the witness to know and understand the matters about which he testifies and his state of mind or fairness to the parties litigant."

In the case of Myers v. Wells (Mo.) 273 S. W. 110, the plaintiff claimed, among other things, an injury to her spine, wrenching of her back in the accident. This chiropractor was also a graduate of the same school as the witness here, but was not licensed to prac-

tice in Missouri. He qualified about as the witness did in the present case and he described the condition of the claimant's vertebrae about as this witness does. The court held him qualified as an expert as to the condition of plaintiff's vertebrae, saying in the syllabus:

"Chiropractor, who had made special study of human spine and had several years' experience in detecting and adjusting subluxation of vertebrae, held, qualified to testify as to condition or relative position of vertebrae, found on direct physical examination, though he was practicing without license."

In the case of Ladlie v. American Glycerin Company, 115 Kan. 507, 223 Pac. 272, there was involved the competency of a chiropractor who was also an amateur X-ray machine operator to testify as an expert on the condition of plaintiff's spine and to interpret his photographs of the same. The substance of the court's opinion is reflected in the paragraph of the syllabus as follows:

"A chiropractor authorized to practice his profession is presumed to be sufficiently versed in the structure of the human spine to testify concerning it, and testify concerning injuries which may affect it."

In the case of Althoff v. Torrison, 140 Minn. 8, 167 N. W. 119, the competency of an osteopath as an expert witness was attacked. The court said:

"An osteopathic physician, who was duly licensed to practice in this state, and who had treated the plaintiff, was permitted to testify as an expert concerning the character of her injuries and the consequences to be expected therefrom. Defendant insists that the reception of this testimony was error on the ground that the witness was not qualified to testify as an expert. Whether a witness shall be permitted to testify as an expert rests largely in the discretion of the trial court. Selover, Bates & Co. v. Freeman, 111 Minn. 318, 127 N. W. 9; Spino v. Butler Bros., 113 Minn. 326, 129 N. W. 590. And his decision upon this question will be reversed only where the error is clear. Krahn v. J. L. Owens Co., 125 Minn. 33, 145 N. W. 626, 51 L. R. A. (N. S.) 650. The witness showed that he had made an extended study of the matters concerning which he testified and was familiar with them, and his testimony was properly received although he had not been licensed as a regular physician. Macon Railway & Light Co. v. Mason, 123 Ga. 773, 51 S. E. 329."

In the case of Macon Railway & Light Co. v. Mason, supra, the Supreme Court of Georgia had under consideration the competency of an osteopath, reviewed the question and the authorities thereon at length,

and the substance of the conclusion is stated in the paragraph of the syllabus as follows:

"One who is the graduate of a college where anatomy and physiology are taught, and who is engaged in the practice of osteopathy, and has gained experience in the treatment of nervous disorders, may be examined as an expert witness, upon these facts being made to appear, notwithstanding he is not a licensed physician, and does not administer drugs to his patients."

The Legislature of this state has seen proper to provide by law for licensing chiropractors. The testimony of the chiropractor in this case covered the particular field of his professional knowledge and he was shown to be qualified as an expert on the matter about which he testified. The treatment of human injuries and ailments, like the law, is not an exact science. Whether the witness was correct in his diagnosis of plaintiff's injuries and in his conclusion as to the probable result of them, was a question for the jury.

The defendants contend that instruction No. 1 was prejudicial in that the court in attempting to state the issues emphasized the claims of plaintiff by stating them in great detail, but minimized the defense by a very brief statement. This contention is somewhat justified, but it was stated that the defense denied all the allegations of plaintiff's petition, and, further, that plaintiff was injured as the result of his own contributory negligence, contributed thereto by the manner in which the car in which he was riding was driven. The claims of plaintiff were not prejudicially overstated. The defense, aside from the general denial, was that plaintiff was guilty of contributory negligence, and the instruction so stated. This, we think, was probably sufficient, but if the defendants were not satisfied, they should have presented an instruction more fully stating their defenses. St. Louis-S. F. Ry. Co. v. Routh, 133 Okla. 168, 271 Pac. 835.

The defendants next complain of that part of instruction No 3 wherein it says there are "three essential elements necessary for the plaintiff to recover for negligence and injury in this case"; and then named them as set out in many opinions by this court. Chicago, R. I. & P. Ry. Co. v. Perkins, 115 Okla. 233, 242 Pac. 535. We are unable to see wherein this statement of the law was error in this case.

The defendants say that the court erred in failing to give an instruction presenting the defense made in their answer and pro-

vided by rule 7, section 10164, C. O. S. 1921, to the effect that at the intersection of roads or streets, vehicles approaching from the right shall have the right of way over those approaching from the left.

In the case of Armstrong v. Green, 113 Okla. 254, 241 Pac. 789, this court passed squarely upon the proposition presented here, and held that, in the absence of a requested instruction covering the point, no error was shown.

The plaintiff contends that the court erred in giving that part of instruction No. 7 wherein the jury was authorized to include in its verdict the amount plaintiff's petition alleged he incurred as expenses growing out of his injury. This same instruction also properly presented all the other elements of plaintiff's recovery. There was a general exception to the instruction; but no proper charge was offered by defendants omitting what they now say was the objectionable element. Under these circumstances, and as there is evidence sufficient to sustain the verdict, this matter presents no error. Great Western Coal & Coke Co. v. Coffman, 43 Okla. 404, 143 Pac. 30; Ft. Smith & W. R. Co. v. Moore, 66 Okla. 322, 169 Pac. 904; Oklahoma Union Ry. Co. v. Lynch, 115 Okla. 146, 242 Pac. 176; Potts, Ex'x, v. Zolinger, 79 Okla. 262, 192 Pac. 1099; Muskogee Electric Traction Co. v. Richards, Adm'r, 97 Okla. 61. 222 Pac. 265.

There is sufficient evidence to sustain the verdict. both as to the liability of the defendants and the amount recovered.

The judgment is affirmed.

EAGLETON, HERR, LEACH, and TEEHEE, Commissioners, concur.

By the Court: It is so ordered.