MARTHA KNOWLES ALLEN v. MAGGIE PEARSAL HINSON

No. 7111SC590

(Filed 20 October 1971)

**Evidence § 50— plaintiff's injuries — opinion testimony by chiropractor**
   In this personal injury action, the trial court erred in allowing an
   expert in chiropractic to give opinion testimony as to plaintiff's injuries
   which was beyond the limitations of his qualification as an expert in
   chiropractic.

APPEAL by defendant from *Hall, Judge,* 3 May 1971 Session
of Superior Court of JOHNSTON County.

This is an action to recover damages for personal injuries
allegedly resulting from the negligent operation of her auto-
mobile by defendant. The collision between plaintiff's car and
defendant's car occurred at about 8:35 a.m. on U.S. Highway
70, about three-tenths of a mile west of Goldsboro, North Caro-
lina. At the place where the collision occurred, there was a
crossover entrance providing access for traffic to move from
the westbound lanes of traffic to the eastbound lanes of traffic.
Immediately prior to the collision, defendant had been proceed-
ing westwardly in the westbound lanes of traffic and had ap-
proached and entered the crossover into the eastbound lanes.
Plaintiff was approaching the crossover headed in an easterly
direction. Defendant crossed over into the eastbound lanes and
her car collided with the car driven by plaintiff.

Plaintiff alleged that defendant turned her car from a
direct line into plaintiff's automobile without first ascertaining
that the movement could be made in safety and without yield-
ing the right-of-way to plaintiff who was traveling in a direct
line.

Defendant answering, denied all allegations of negligence,
averred that the collision resulted solely from plaintiff's negli-
gence in operating her automobile at a speed greater than was
reasonable and prudent under the conditions then existing, in
her failure to maintain her automobile under proper control,
and in her failure to keep a proper lookout; and that even if
defendant were guilty of negligence, plaintiff's contributory
negligence specifically set out, should bar her recovery.

Issues of negligence, contributory negligence and damages
were submitted to the jury and answered in plaintiff's favor.
Defendant appealed.

*Corbett and Corbett, by Albert A. Corbett and Albert A. Corbett, Jr., and C. G. Grady, for plaintiff appellee.*

*Spence and Mast, by Robert A. Spence, for defendant appellant.*

MORRIS, Judge.

Dr. Harold K. Underwood was qualified, without objection, to testify as an expert in the field of "chiropractory" to be allowed to "express his opinion in that field." Defendant contends that Dr. Underwood was permitted, over objection, to give his opinion as an expert on subject matters for which he was not qualified as an expert as to his diagnosis, treatment and opinion as to disablement, injuries of the plaintiff, and permanence of her injuries, and that this constitutes prejudicial error. We agree.

G.S. 90-143 defines chiropractic as "the science of adjusting the cause of disease by realigning the spine, releasing pressure on nerves radiating from the spine to all parts of the body, and allowing the nerves to carry their full quota of health current (nerve energy) from the brain to all parts of the body."

G.S. 90-18 provides that it shall be a misdemeanor for any person to practice medicine without a license first obtained in accordance with the statutory requirements and provides further: "Any person shall be regarded as practicing medicine or surgery within the meaning of this article who shall diagnose or attempt to diagnose, treat or attempt to treat, operate or attempt to operate on, or prescribe for or administer to, or profess to treat any human ailment, physical or mental, or any physical injury to or deformity of another person: Provided, that the following cases shall not come within the definition above recited: . . . (10) The practice of chiropractic by any legally licensed chiropractor *when engaged in the practice of chiropractic as defined by law,* and without the use of any drug or surgery." (Emphasis added.)

In the trial of this case, Dr. Underwood was, without objection, qualified to express his opinion *in the field of "chiropractory."* We are aware that there is respectable authority to be found holding that a chiropractor is competent to testify in a personal injury action, as an expert witness, concerning

matters within the scope and profession of chiropractic. Annotation, 52 A.L.R. 2d 1384 and cases there cited: *Badke v. Barnett,* 35 App. Div. 2d 347, 316 N.Y.S. 2d 177 (1970); *Fries v. Goldsby,* 163 Neb. 424, 80 N.W. 2d 171 (1956); *Ward v. American Rayon Corp.,* 211 Tenn. 535, 366 S.W. 2d 134 (1963); *Watson v. Ward,* Tex. Civ. App., 423 S.W. 2d 457 (1967); *Jones v. National Biscuit Co.,* 29 App. Div. 2d 1033, 289 N.Y.S. 2d 588 (1968). It has also been held that a chiropractor is competent to express his opinion as to the probable cause of an injury or condition, in a personal injury action, within the scope of the practice of chiropractic, *Agler v. Schine Theatrical Co.,* 59 Ohio App. 68, 17 N.E. 2d 118 (1938); and to give his opinion as to probable effects and permanence of an injury within the field of chiropractic, *Oklahoma Natural Gas Corp. v. Schwartz,* 146 Okla. 250, 293 P. 1087 (1930); *O'Dell v. Barrett,* 163 Md. 342, 163 A. 191 (1932); *Lowman v. Kuecker,* 246 Iowa 1227, 71 N.W. 2d 586 (1955).

Plaintiff in this case alleged that she sustained serious injury to her neck and back, among others. Defendant does not object to Dr. Underwood's testifying as to what he found upon examination nor to his treatment of the plaintiff.

The testimony to which defendant did object at trial and the admission of which she now urges was prejudicial error was as follows:

"Q. Doctor, without enumerating all the questions over again, but relating solely to the last part of it, do you have an opinion satisfactory to yourself as to whether or not the automobile wreck of July 18, 1969, in which Mrs. Allen was involved could or might have caused those conditions?

A. Yes, sir.

Q. What is that opinion?

A. That it could have.

Q. Dr. Underwood, without reframing all the question using the same facts, do you have an opinion satisfactory to yourself as to whether or not Mrs. Allen could or may continue to suffer pain during the years to come?

A. Yes, I do.

Q. What is that opinion?

A. Due to the history that I obtained from Mrs. Allen and my treatment over the period of time she could continue to have difficulty with her symptoms—disability.

Q. Dr. Underwood, from your training and experience over the years with patients and the type narrowing of the vertebrae between 4 and 5, what does that indicate to you?

A. It creates an instable or unstable condition of the spine at that point.

Q. What does that indicate as to whether it can progressively get worse over a period of time?

A. It indicates a stretching or injury to the ligament tissue which has created the unstable condition, if scar tissue and sufficient damage has been done to this ligament structure then as years pass along then a degenerative condition could progressively get worse.

Q. State whether or not when the soft tissue is gone between the vertebrae whether or not that generates pain and causes pain.

A. Ask the question again, please?

Q. When there is a narrowing of the vertebrae because of the degeneration of the tissue between the vertebrae, state whether or not in years to come it could cause pain?

A. Yes, sir.

Q. Do you have an opinion satisfactory to yourself as to whether that could or might get progressively worse and she would continue to have pain permanently?

A. Yes.

Q. What is that opinion?

A. Again, due to the history and due to my treatment of the patient it could be possible that degenerative changes could take place at this area and cause difficulty in the future."

Of course, it is obvious that Dr. Underwood did not intend to testify that possible future difficulty would be "due to my treat-

ment" but intended to say that his judgment as to possible future difficulty was based on her history and the treatment he found necessary.

Chiropractic is said to be the largest of all drugless healing professions. It is apparent that the fields of drugless healing and medicine and surgery are not co-extensive. The statutes of North Carolina carefully define the practice of chiropractic. Both by definition and exclusion it is limited. Doctors with unlimited licenses are competent to give expert testimony in the entire medical field. Chiropractors, on the other hand, are limited in their testimony to their special field as defined and limited by statute.

In our opinion, Dr. Underwood was allowed to testify as an expert to an extent which carried his expertise far beyond the limitations of his qualification as an expert in the field of chiropractic.

Since there must be a new trial, we do not discuss the sufficiency of the evidence. Suffice it to say that the evidence was sufficient for submission to the jury of issues of negligence and contributory negligence.

New trial.

Judges BRITT and PARKER concur.