Joyce **TURNER**, Appellee,

v.

Dorothy May **DEWBRE**, Appellant.

No. 46651.

Court of Appeals of Oklahoma, Division 2.

Sept. 3, 1974.

Rehearing Denied Oct. 4, 1974.

Certiorari Denied Dec. 3, 1974.

Released for Publication by Order of Court of Appeals Jan. 17, 1975.

C. W. Schwoerke, Schwoerke & Schwoerke, Oklahoma City, for appellee.

Richard A. Procter, Procter, West & Speck, Oklahoma City, for appellant.

BRIGHTMIRE, Presiding Judge.

Plaintiff brought this action to recover for neck and back injuries resulting from an automobile collision said to have been the fault of defendant.

Following a jury trial judgment was entered upon a verdict awarding plaintiff $8,522. Defendant appeals claiming the judgment was achieved by the commission of two reversible errors: (1) in allowing a drugless healer—a chiropractor—to testify as an expert "regarding diagnosis of plaintiff's medical condition, causal relationship between the diagnosis and the accident; and opinion as to permanent disability"; (2) in not granting a mistrial during closing argument when plaintiff's attorney made a statement from which one could infer "defendant is covered by liability insurance."

■ The first contention is a disinterment of one twice rejected by our supreme court over 40 years ago. In so doing the high tribunal dispelled the illusory premise upon which it had to stand—videlicet, that the science of diagnosing, treating or preventing disease and other damage to the human body was an exclusive domain of one holding a *Medicinae Doctor* (M.D.) degree. Instead the court wisely reconsecrated the singular and simple criterion dating from statehood for the trial court to follow in determining whether to allow a person to testify as an expert about relevant scientific matters, medical or otherwise—namely, the trial court must preliminarily find there to be an affirmative answer to this question: Is the witness possessed of knowledge on the subject under examination "not acquired by ordinary persons"? Oklahoma Natural Gas Corp. v. Schwartz, 146 Okl. 250, 293 P. 1087 (1930). Inter Ocean Oil Co. v. Marshall, 166 Okl. 118, 26 P.2d 399 (1933). The foundation for the criterion is this venerable rule from earlier cases referred to in *Schwartz* and *Marshall*: "An expert is one possessing, in regard to a particular subject or department of human activity,

knowledge not acquired [or possessed] by ordinary persons." Yates v. Garrett, 19 Okl. 449, 92 P. 142 (1907); Cook v. First Nat'l Bank, 110 Okl. 111, 236 P. 883 (1925).

■ From these cases one gets the impression that a witness need not have some particular academic degree, or indeed any formal training at all. He can qualify as an expert on some matter if his testimony discloses he has had sufficient experience to warrant a conclusion he has acquired a special knowledge of a subject not generally possessed by others.

Thus in *Yates* the court observed that even those witnesses (cattlemen) who disclaimed being experts on the subject of Texas Fever were properly allowed to testify as experts on the question of whether certain of plaintiff's cattle died from the disease because "when taken as a whole, their testimony shows that they had had sufficient experience with the disease and treatment of it, and had been brought in contact with it . . ." enough that one could say they possessed special knowledge of cattle afflicted with Texas Fever—knowledge which had probative credence.

In *Cook* there arose a question of drilling rig values. Referring to the *Yates* doctrine the court said it was not an abuse of discretion to allow a couple of men to testify as experts on rotary rig values one of whom had been in the oil business for 15 years and the other for 32—but it was an abuse of discretion to let a man testify as an expert on the subject whose testimony disclosed his only qualification for special knowledge of rotary rig values was "that during his life he had bought one oil rig . . . [and] never had any interest in any other"!

We come now to the two chiropractic cases mentioned earlier. The *Marshall* case is of particular interest because it specifically held a chiropractor was properly permitted to testify "as to what causes would bring on a miscarriage" and to give his opinion concerning the cause of one

suffered by Mrs. Marshall based on case history as well as hypothetical questions put to him at trial.

"The weight and value of his testimony," said the court, "is a matter for the jury and is subject to be supported or minimized by examination and cross-examination, just as is that of any other expert witness."

The earlier case, *Schwartz*, is factually closer to the one at bar. There the plaintiff complained of neck and back injuries in an automobile wreck. At trial the only expert testimony adduced was that of a chiropractor who was allowed to testify "and give his opinion as to the condition of plaintiff and the effect and duration of his injuries." Following a verdict for plaintiff defendant appealed insisting that the admission of such testimony was reversible error.

In affirming the judgment the court first mentioned the *Yates* definition of an expert. Then it reminded its readers of the fact that to be licensed in this state a chiropractor must pass examinations on the following "medical" subjects: "Chiropractic Principles, Anatomy, Histology, Physiology, Symptomatology, Orthopedia, Chemistry, Spinography, Diagnosis, Sanitation and Hygiene, Pathology, Public Health Service and Adjustology"—a requirement that still exists. 59 O.S.1971 § 164.

And finally after reviewing decisions of other states upholding the competency of drugless healers to testify as qualified experts on the medical aspects of various injuries, the court promulgated this syllabus: "A person who is neither a physician or a surgeon, but who is a graduate with a three years' course in a chiropractic school and licensed under the laws of this state to practice as a chiropractor, may testify as to injuries of the human vertebrae, the possible cause of such injuries, and their probable duration."

Defendant suggests, however, that these cases were overruled by implication in Boos v. Donnell, Okl., 421 P.2d 644 (1966). She argues that because *Boos* held a chiropractor is not licensed to "practice medicine" as is contemplated by 59 O.S.1971 §§ 493–495 dealing with physicians and surgeons, "It stands to reason . . . he does not meet the qualifications to be a medical practitioner in the State of Oklahoma, [therefore] he certainly would not meet the skill·required to testify as an expert in the field of medicine."

Merely to state defendant's conclusion seems sufficient to lay bare its error. For if by the words "medical practitioner" defendant means only those subject to the provisions of 11 O.S.1961 § 544.6, as interpreted in *Boos* (physicians and surgeons), then she is contending that only such licensees possess any special scientific medical knowledge—a rather naive irrationality. Or on the other hand if defendant has in mind that before a chiropractor can qualify as an expert witness he must possess all of the educational background and training of one licensable by the Board of Medical Examiners under 59 O.S.1971 § 493, then she labors under a misapprehension of law accompanied perhaps by a touch of wishful thinking.

We are unable to perceive how there can be drawn from *Boos* an inference colliding with the luculent lodestar logic of *Schwartz* or *Marshall*. All *Boos* held was that a chiropractor had no right to hospital staff privileges at the Muskogee General Hospital because the controlling provisions of 11 O.S.1961 §§ 544.1–544.9 restricted such privileges to "physicians and surgeons" licensed by the Board of Medical Examiners under 59 O.S.1961 §§ 481–518 as distinguished from chiropractors who are licensed by a Board of Chiropractic Examiners under 59 O.S.1961 §§ 161–168. The decision relates not at all to the competency of either "physicians and surgeons" or chiropractic practitioners as expert witnesses on scientific matters relating to a person's physical condition.

Hence we find defendant's first proposition meritless.

■ The second one is likewise unsubstantial—that plaintiff's attorney in closing

argument implied defendant was covered by liability insurance "warranting a mistrial."

In the first place none of the argument was recorded disenabling us to determine with certainty what each lawyer said. In the second place no mention was made of the alleged offense until after the arguments had ended, the jury excused for lunch, and the court recessed. It was then that defendant's attorney said:

"Comes now the defendant and moves for a mistrial on the statement of plaintiff's counsel in his closing argument, for the purpose of suggesting insurance to the jury, that the Dewbres were good friends of his, that he had represented them in the past as their attorney, and that he didn't want to hurt them. The only reason or purpose for that statement being made was to indicate liability insurance to the jury and to prejudice the defendant in the lawsuit, on that basis the defendant moves for a mistrial."

"Overruled," said the court who, having heard the complained of argument in context, evidently disagreed with defendant's suggested import of whatever was said.

Later, after lunch, defendant made additional record by asking the court to affirm that plaintiff's counsel stated "he had represented Mrs. Dewbre and her family on a prior occasion and had no desire to hurt Mrs. Dewbre or say anything bad about her."

"I was not paying too much attention to that," said the judge, "but I think substantially that is what was said. I really don't remember the essence of it. He indicated that he knew the family and had represented them."

The defense lawyer then asked the Court Clerk who was present for confirmation of his recollection.

Said the clerk, "I was present, but I was reading . . . and I don't recall the statement, sir."

In these circumstances we are unable to say plaintiff's attorney made an improper statement to the jury, or if he did what it was, or in any event that defendant took timely action to have the court take any corrective action which may have been warranted.

Since we find no error in the record adversely affecting the substantial rights of defendant the judgment appealed from is affirmed.

BACON and NEPTUNE, JJ., concur.