343 So.2d 1305 (1977)
Noel HOROWITZ and Sadie Horowitz, Husband and Wife, Appellants,
v.
AMERICAN MOTORIST INSURANCE COMPANY et al., a Corporation, Appellees.
No. 76-1041.
District Court of Appeal of Florida, Second District.
March 23, 1977.
Rehearing Denied April 21, 1977.
John B. Cechman of Goldberg, Rubinstein & Buckley, Fort Myers, for appellants.
David W. Miner, of Mann, Fay and Price, Bradenton, for appellees.
*1306 SCHEB, Judge.
Is a chiropractor competent to give expert testimony under the no-fault insurance law on the question of whether a claimant suffered a permanent injury?
The trial court held a chiropractor is not competent to testify within reasonable medical probability whether a person has sustained permanent injuries within the purview of the Florida Automobile Reparations Reform Act. Thereupon, the trial judge dismissed this suit by appellant/plaintiff for plaintiff's failure to meet the threshold requirements of permanent injuries under the Act. Plaintiff appeals. We reverse.
This suit arose out of an automobile accident on December 17, 1974, which resulted in injuries to the plaintiff, Horowitz. In an action by Horowitz and his wife, the plaintiffs presented Anthony J. Dorto, a chiropractor for the purpose of establishing that he had suffered a "permanent injury within reasonable medical probability" to qualify him to maintain his tort action against the defendants under Section 627.737, Florida Statutes (1975).
Dr. Dorto presented impressive credentials in the chiropractic field. The court recognized him as a qualified expert in that field. However, the trial judge ruled that "... a chiropractor may not testify as to medical probability as the term is used in Florida Automobile Reparations Act . ." Since the plaintiff failed to establish the threshold requirement of $1,000 medical expenses and offered no other competent medical testimony to establish a permanent injury, the court dismissed the plaintiff's suit.
Dr. Dorto is licensed to practice chiropractic medicine in the State of Florida. His credentials included a baccalaureate degree in science, and professional degrees in radiology and chiropractic medicine. He defined his profession as "... the study in science and art of detecting nerve interference and/or pressure from the spinal nerves and other joints in the body."
Plaintiff Horowitz was first seen by Dr. Dorto three days after the accident occurred. He complained of injuries in his neck and lower back. After examining him and taking x-rays, Dr. Dorto concluded that Horowitz' problem was between the two disc spaces causing pressure on two nerves. Between that first visit and July 24, 1975, Dr. Dorto saw Horowitz on twenty-six separate office visits. Dr. Dorto testified that he checked Horowitz' posture, range of motion, and his spine and nerve system. He also took his blood pressure and pulse, checked his heart and lungs, checked the nerve sensation in his legs and arms, the reflexes in his upper and lower extremities and checked out his muscle strength and the diameter of muscles in the upper and lower extremity.
Dr. Dorto testified that the tests he conducted indicated injury to muscle and nerve with the limitation in the range of motion in the lumbosacral spine. He found a lack of sensation in the left lower leg and tenderness at the base of the plaintiff's spine. Also, he noted muscle spasms of the left trapezius muscle next to the neck and shoulder, as well as under the skull. He treated his patient with physical therapy, traction, diathermy, ultra-sound to massage the nerves and reduce swelling, internal management by vitamins and minerals and adjustments to the spine.
Dr. Dorto opined that because of the restricted range of motion in his lumbosacral spine and the lack of nerve feeling in the outside of his right leg, Horowitz would not have a complete recovery. He attributed this to Horowitz' automobile accident on December 17, 1974. He was not permitted to state an opinion on whether there was a permanent injury within either a reasonable medical or chiropractic probability.
In Mills v. Redwing Carriers, Inc., 127 So.2d 453 (Fla. 2d DCA 1961), this court stated that to warrant use of testimony from a qualified expert, two elements were required. First, the subject of the inference must be so distinctively related to some science, profession, business or occupation as to be beyond the ken of the average *1307 layman; and second, the witness must have such skill, knowledge or experience in that field or calling as to make it appear that his opinion or inference will probably aid the trier of facts in its search for truth.
The definition and scope of permitted practice of a chiropractor is set out in Section 460.11, Florida Statutes (1975), which provides, in relevant part:
"(1) For all purposes `chiropractic' is defined to be a noncombative principle and practice consisting of the science of the adjustment, manipulation, and treatment of the human body in which vertebral subluxations and other malpositioned articulations and structures that are interfering with the normal generation, transmission, and expression of nerve impulse between the brain, organs, and tissue cells of the body, thereby causing disease, are adjusted, manipulated or treated thus restoring the normal flow of nerve impulse which produce normal function and consequent health.
"(2) Any chiropractic physician who has complied with the provisions of this chapter may:
(a) Examine, analyze, and diagnose the human living body and its diseases by the use of any physical, chemical, electrical, or thermal method, and use the x-ray for diagnosing, and may use any other general method of examination for diagnosis and analysis taught in any school of chiropractic recognized and approved by the Florida State Board of Chiropractic Examiners.
(b) Chiropractic physicians may adjust, manipulate, or treat the human body by manual, mechanical, electrical, or natural methods, or by the use of physical means, physiotherapy, including light, heat, water, or exercise, or by the oral administration of foods, food concentrates, and food extracts, and may apply first aid and hygiene, but chiropractic physicians are expressly prohibited from prescribing or administering to any person any medicine or drug or from performing any surgery except as hereinabove stated or from practicing obstetrics."
We have been unable to locate any Florida decision directly on point. However, in Watson v. Ward, 423 S.W.2d 457 (Tex.Civ. App. 1967), damages were awarded to one injured in a collision between two pickup trucks. The only medical evidence offered at the trial was that of a chiropractor who diagnosed the plaintiff's injury as that commonly known as a whiplash, involving only the muscles, blood vessels, nerves and vertebrae in and around the neck. The chiropractic physician was not qualified to operate on the human body nor was he permitted to write prescriptions for medication. The only treatment given the plaintiff was manipulation of his vertebrae and affected parts and application of heat treatments. Citing Maryland Casualty Company v. Hill, 91 S.W.2d 391 (Tex.Civ.App. 1936), the court held the doctor's testimony that the plaintiff was permanently injured to be admissible.
For other cases holding a chiropractor qualified to testify as to the nature and extent of injuries related to those portions of the body with which a chiropractor deals, see Oklahoma Natural Gas Corp. v. Schwartz, 146 Okla. 250, 293 P. 1087 (1930); Yelloway, Inc. v. Hawkins, 38 F.2d 731 (8th Cir.1930); Johnston v. Peairs, 117 Cal. App. 208, 3 P.2d 617 (1931); O'Dell v. Barrett, 163 Md. 342, 163 A. 191 (1932). The Annotation in 52 A.L.R.2d 1384 (1957), states:
"It is a general rule that a chiropractor is competent to testify in personal injury action as an expert or medical witness, concerning matters within the scope of the profession and practice of chiropractic."
A trial court initially exercises discretion in determining whether one tendered as an expert witness has the education and experience required to establish him as an expert. Seminole Shell Co. v. Clearwater Flying Co., 156 So.2d 543 (Fla. 2d DCA 1963). Here, the court accepted Dr. Dorto as an expert in the field of chiropractic medicine. Having accepted him as an expert in his field, and we think correctly so, the trial judge then should have proceeded to determine whether the plaintiff's *1308 injuries were within the scope of professional practice of a chiropractor. On the record before us, we conclude that the plaintiff's injuries come within the scope of treatment which by law a chiropractor is permitted to render to a patient.
We believe that a chiropractor, licensed by the State of Florida, who presents necessary credentials as to education and experience is qualified to testify as an expert in relation to injuries that are within the ambit of chiropractic discipline.
But do the requirements of the Florida Automobile Reparations Reform Act, Chapter 627, Florida Statutes, dictate a contrary ruling? To maintain a tort action for injuries received from an automobile accident, it is incumbent upon the plaintiff to establish a permanent injury within "reasonable medical probability" under Section 627.737, or to establish medical expense in excess of $1,000.[1] But the Act does not restrict injured persons from receiving treatment by chiropractors. Nor does it limit payment of "medical" expenses to medical doctors. Rather, Section 627.736, Florida Statutes, provides for payment to "any physician, hospital, clinic, or other person or institution lawfully rendering treatment to an injured person for bodily injury ..." "Medical" relates to the science of medicine and the practice of chiropractic is the practice of medicine, although in a restricted form. See Lowman v. Kuecker, 246 Iowa 1227, 71 N.W.2d 586 (1955). Nothing in the Florida No-fault Law expressly precludes a qualified chiropractor from testifying as to a reasonable medical probability as to the permanency of such injuries, and we find no reason to imply any. We hold a chiropractor who qualifies as an expert witness may give opinion evidence as to permanency of injuries where such injuries are to areas of the body within his permitted practice and his education, training and expertise. For example, the First District Court of Appeal held that a chiropractor was not competent to testify in respect to an eye injury. Aiken v. Miller, 298 So.2d 477 (Fla. 1st DCA 1974). We agree. Moreover, we must also recognize that the weight and credibility to be given the chiropractic testimony, as with any expert testimony, is a matter for the finder of fact.
As a caveat here we point out that in the past the educational and training requirements for chiropractors may have been less uniform than those in the traditional medical fields. Trial judges must therefore look carefully into the backgrounds, education and experience of the witness before determining that a chiropractor is qualified to testify as to matters within the ambit of his permitted practice and his professional expertise.
Accordingly, the judgment of the trial court is reversed and the cause remanded for further proceedings consistent with this opinion.
BOARDMAN, C.J., and OTT, J., concur.
NOTES
[1] Section 627.737, concerning limitation on bringing tort actions, was amended by Ch. 76-266, effective October 1, 1976, repealing the $1,000 threshold. As amended, Section 627.737(2) now provides:

(2) In any action of tort brought against the owner, registrant, operator, or occupant of a motor vehicle with respect to which security has been provided as required by ss. 627.730  627.741, or against any person or organization legally responsible for his acts or omissions, a plaintiff may recover damages in tort for pain, suffering, mental anguish, and inconvenience because of bodily injury, sickness, or disease arising out of the ownership, maintenance, operation, or use of such motor vehicle only in the event that the injury or disease consists in whole or in part of:
(a) Loss of a body member.
(b) Permanent loss of a bodily function.
(c) Permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement.
(d) Significant permanent scarring or disfigurement.
(e) A serious, nonpermanent injury which has a material degree of bearing on the injured person's ability to resume his normal activity and lifestyle during all or substantially all of the 90-day period after the occurrence of the injury, and the effects of which are medically or scientifically demonstrable at the end of such period.
(f) Death.